# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

**LISA WAGNER**, an individual,

          Plaintiff,

v.

**LEE COUNTY, FLORIDA BOARD OF COUNTY COMMISSIONERS**, a political subdivision of the State of Florida, and **GLEN SALYER**, an individual, **JAMES MOORE**, an individual, **JENNIFER BERG**, an individual, **CHRISTINE BRADY**, an individual,

          Defendants.

**CIVIL ACTION**

**Case No.  2:14-cv-029**

**Judge: Sheri Polster Chappell**

**Mag. Judge:  Carol Mirando**

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **LISA WAGNER** ("**WAGNER**"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 15, (a)and states the following for her Amended Complaint:

### CAUSES OF ACTION

1.      This is an action brought under 42 U.S.C. §1983 (§1983) for violation of the First Amendment of the United States Constitution, under the Racketeer Influenced & Corrupt Organization Act (RICO), under the Fair Labor Standards act for unpaid overtime wages, and under F.S. §112.3187 for violation of Florida's Public Whistleblowers Act (PWA).

### PARTIES

2.      The Plaintiff, **LISA WAGNER** ("**WAGNER**") is an individual and at all material times was a resident of Lee County, Florida.

1

3.     Defendant, **LEE COUNTY, FLORIDA BOARD OF COUNTY COMMISSIONERS** ("**COUNTY**") is a political subdivision of the state of Florida. **COUNTY** is a person as intended by 42 U.S.C. §1983 and is an employer under the PWA.

4.     Defendant **GLEN SALYER** ("**SALYER**") is an individual and resident of Lee County, Florida and at all material times acted as a state actor pursuant to his employment with the **COUNTY**.

5.     Defendant **JAMES MOORE** ("**MOORE**") is an individual and resident of Lee County, Florida and at all material times acted as a state actor pursuant to his employment with the **COUNTY**.

6.     Defendant **JENNIFER BERG** ("**BERG**") is an individual and resident of Lee County, Florida and at all material times acted as a state actor pursuant to her employment with the **COUNTY**.

7.     Defendant **CHRISTINE BRADY** ("**BRADY**") is an individual and resident of Lee County, Florida and at all material times acted as a state actor pursuant to her employment with the **COUNTY**.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction of this matter under 28 U.S.C. §1331.

9.     This Court has supplemental jurisdiction over **WAGNER**'s state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff resided in, and the Defendants conduct business in, and some or all of the events giving rise to Plaintiff's claims occurred in Lee County, Florida, which is within the

Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.02(b)(5) since Lee County is within the Fort Myers Division.

## GENERAL ALLEGATIONS

11.     **WAGNER** was hired by **COUNTY** on or about January 26, 2012 as an administrative specialist in the Economic Development Office.

12.     **WAGNER** always performed her assigned duties in a professional manner and was very well qualified for her position.

### Lee County Audit & Wagner's Speech Therein

13.     During her tenure with **COUNTY**, **WAGNER** became aware of the **COUNTY**'s extensive improper use of grant and loan programs through the Lee County Economic Development Office (EDO).

14.     The **COUNTY** EDO has multiple responsibilities to promote, coordinate and, monitor economic development, recruitment, marketing, financial, and administrative functions in Lee County.

15.     The **COUNTY** EDO deals with 4 different categories of grant monies. The FIRST and LCJOP programs involve the disbursement of Lee County monies. The Florida Qualified Targeted Industries Tax Refund Program (QTI) and Florida State Closing Fund (FCF) are disbursed by the State of Florida.

16.     After receiving several complaints regarding the improper use of the grant and loan programs, an audit was commissioned.

17.     The audit was performed by Mr. Lawrence M. Haut, GCAP, CFE.

3

18.     **WAGNER**, along with five (5) other employees, voluntarily participated and testified in the audit of the **COUNTY** EDO, fully disclosing the extent of the **COUNTY**'s malfeasance.

19.     **WAGNER** testified and provided a written statement on more than one occasion in April and May 2013, and reported her concerns to her supervisor on several occasions.

20.     One item of concern was that VR Labs first tried to obtain $42 million in bonds but such a request failed due to a lack of adequate collateral. When that request was rejected, former Commissioner Tammy Hall set up a meeting between **MOORE** and other **COUNTY** staff on July 22, 2010 to discuss approving the VR Labs grant.

21.     **MOORE** then contacted **SALYER**, who possessed personal files on VR Labs that were separate from any **COUNTY** files, which files falsely indicated that VR Labs was affiliated with another well-established company.

22.     Specifically, during the lawful investigation, **WAGNER** voluntarily disclosed information to the auditor during several interviews regarding a $5 million FIRST grant approved by the **COUNTY** in 2010 was based on the grantee, VR Lab's, commitment that they would construct a headquarters building and manufacturing plant in Lee County and create 208 jobs by 2015.

23.     **SALYER**, who holds a juris doctorate and was then the assistant to the county manager, served as the interim director of the **COUNTY** Economic Development Office from the date of **MOORE**'s retirement to January 22, 2014. **SALYER** first brought the VR Labs project to Lee County and was the person who supposedly performed the due diligence study concerning VR Labs.

24.     As **SALYER** has a close, personal relationship with VR Labs CEO Jeffrey Kottkamp, **SALYER** abused his state employment by failing to perform a proper due diligence study into VR Labs and by writing a fraudulent proposal for a FIRST grant despite having inside knowledge that VR Labs did not intend to honor its commitments to the taxpayers of Lee County. **SALYER** also wrote the grant application so as to provide VR Labs with nearly $5 million upfront (and not paid incrementally as is usual) and did derive personal benefits from the **COUNTY** approving VR Labs for a FIRST grant.

25.     The **COUNTY** typically did not provide such grant funds to non-established companies like VR Labs.

26.     However, **SALYER** intentionally provided misinformation in order to have the VR Labs grant approved by the **COUNTY**, including indicating the company was "decades old," despite VR Labs having not been in existence for more than seven days, and describing VR Labs as "an established, credit worthy company."

27.     **SALYER**, in concert with **MOORE**, and for their own pecuniary gain, wrote the VR Labs proposal and did receive personal financial benefits from the FRIST grant being approved by the **COUNTY**.

28.     **SALYER** required an office assistant, who is no longer employed with the **COUNTY**, to e-sign **MOORE**'s name to indicate that management had approved the grant application in order for the Commissioners to vote.

29.     As has been widely reported by the media, VR Labs has employed only 8 employees, which is not even close to their commitment, and its manufacturing plant is not operational. Incredibly, **SALYER** received a promotion and pay raise after VR Labs problems initially came to light.

5

30.     Through **SALYER**'s actions, Kottkamp, **SALYER**'s friend, has benefitted from VR Labs' immediate receipt of the $5 million FIRST grant and continues to be in VR Lab's payroll.

31.     **COUNTY** management failed to perform any due diligence in regard to VR Labs.

32.     The **COUNTY** failed to properly investigate VR Labs and **WAGNER** disclosed to the auditor the **COUNTY**'s abuse of the state and local grant and loan programs.

33.     **WAGNER** also provided information regarding a 2010 loan of $75,000 from the "Lee Is Lending Program" for a business owned by the **COUNTY** EDO Marketing Manager's (**BERG**) spouse.

34.     The audit also discovered that **COUNTY** advertising/marketing business has been routed to **BERG**'s husband's company. These transactions were deemed to be in violation of Florida Statute, Title X, Chapter 112, and Lee County Policy 206:4, regarding ethics and conflict of interest. **BERG** resigned shortly thereafter in May 2013.

35.     **WAGNER** also provided information about a different marketing contract given to **BERG**'s husband that had no other bids sought. **WAGNER** was asked to change the amount noted in the official minutes from the contract amount of about $15,000.00 to $7,500.00 so that it would not appear that **BERG**'s husband recieved the entire amount because he had expenses related to the project and the entire amount was not in fact his profit.

36.     **WAGNER**  informed her supervisor that she was not comfortable documenting an amount other than the paperwork and invoice documentation, but was directed to do it anyway; **WAGNER** followed that directive but reported it to her supervisor.

37.     **WAGNER** and five (5) other coworkers also disclosed information regarding other improper conduct within the LCEDO, including but not limited to:

a. Sending advertisement/marketing jobs that could be performed by EDO employees to the Orlando Company, which passed funds to **BERG**'s husband;

b. Paying marketing invoices with little or no detail of hours and cost for the benefit of **BERG**'s husband;

c. Paying exorbitant prices for products and services never used for the benefit of **BERG**'s husband;

d. Payment of $22,000 to the marketing company for 200 notebook folders, which are name brand items priced at $10 each on the internet which would total $2,000 for the benefit of **BERG**'s husband;

e. **BERG** contracting her husband's company to do work for EDO and she instructed staff to bill the Orlando Company;

f. Responsibility for accounts payable reviews and documents being transferred from the Fiscal Officer to the marketing and payables clerk;

g. The marketing company in prior years sending Christmas gifts to employees at the office and since 2012, such gifts are being sent to selected employees at home so as to subvert ethical rules;

h. **BERG**'s attendance records for payroll were being altered by the marketing/payables clerk, adjusting paid time off verses unpaid time after leave was signed by the Director, also failing to process leave slips for time off;

i. A website set up for the Southwest Florida Regional Economic Development's marketing by an Orlando Company cost $240,000 and there was not one call received from the website despite spending $50,000 from the operating funds towards Lee County's contribution;

j. **BERG** using PR Web (VOCUS) for County press releases and for her husband's company ads, paid for by the County;

k. Employees having only had two performance evaluations in the last five years, and;

l. Records being removed from the desk of the employee who takes minutes of meetings. Weeks later, the records were returned with several minutes deleted. Other confidential records were also removed from the employee's desk.

38.     **MOORE** and **SALYER** acted in concert to allow the conduct of **BERG** without recourse and for their own gain.

39.     **MOORE** even made specific requests to direct a contract to **BERG**'s husband's company.

40.     Despite the results of the Clerk of Court's audit, in regard to the finding of low employee morale due to threats of termination, **MOORE** stated "It's an ongoing problem, I think it's easy to address so I'm not overly concerned about it."

41.     After the completion of the audit by the Clerk of Courts, **MOORE**, the then director of the **COUNTY**'s EDO, was permitted to resign but retained his post for months afterward.

42.     **MOORE** then permitted the terminated **BERG** to enter the EDO, unescorted and unsupervised, where **BERG** accessed another employee's computer, accessed and removed documents, directed over 400 email notes to affiliates and associates of the EDO, and removed boxes of paperwork, records and even an original work of art.

43.     **WAGNER**'s speech in regard to the above was speaking as a private citizen and were of a matter of public concern.

44.     **WAGNER** was exercising her free speech rights under the First Amendment of the United States Constitution.

45.     Speaking on these above topics was not part of **WAGNER**'s official job duties.

46.     **WAGNER**'s speech was not made in her capacity as a public employee but rather as a concerned citizen who possessed knowledge of **COUNTY** malfeasance.

47.     **WAGNER**'s speech did not interfere with the efficient or effective operation of the **COUNTY** and in fact was done to promote the same.

48.     Any **COUNTY** desire to restrict **WAGNER**'s speech on these topics would not serve the goal of treating public employees like any member of the general public to hold that all speech within the office is automatically exposed to restriction.

**County & Individual Defendants' Retaliation Against Wagner**

49.     In or about July 2013, prior to the release of the Audit, **COUNTY** provided **WAGNER** with an excellent performance review.

50.     However, following the release of the auditor's findings on or about August 7, 2013, **WAGNER** and her 5 coworkers who cooperated and spoke freely during the auditor's lawful investigation through the Lee County Clerk of Courts began to be subjected to retaliation.

51.     Beginning in or about September 2013, **COUNTY** appointed **SALYER** to head the EDO, thereby becoming **WAGNER**'s supervisor.

52.     **MOORE**, acting in his capacity as a state actor, put into motion a campaign of retaliation against **WAGNER** and the 5 other coworkers, including verbal attacks that included specific reference to their cooperation and truthful disclosures to the auditor and sudden harsh criticisms of their workplace performance. **SALYER**, acting in his capacity as a state actor, continued **MOORE**'s a campaign of retaliation against **WAGNER** and the 5 other coworkers, including verbal attacks that included specific reference to their cooperation and truthful disclosures to the auditor and sudden harsh criticisms of their workplace performance.

53.     **SALYER**, in association with **MOORE**, **BERG** and **BRADY**, all acting in their capacity as state actors, retaliated against **WAGNER** by suddenly informing her of her termination on October 30, 2013, to be effective on November 13, 2013.

54.     **SALYER**, **MOORE**, **BERG** and **BRADY** targeted those persons who cooperated in the audit, terminating 5 of the 6 within the first ten (10) weeks of his tenure, often

making specific negative comments regarding those persons who exercised their free speech rights in speaking to the auditor regarding a matter of public concern, including **WAGNER**.

55.     In fact, on several occasions, **MOORE** informed **WAGNER** that he would "write them up" whenever any problems or her complaints were brought to his attention or "if they [employees] make trouble."

56.     When **WAGNER** approached **MOORE** regarding the issues with **BERG**, she was informed to "shut up about it" and was told to stop asking questions about the **COUNTY** website.

57.     The **COUNTY**'s EDO "reorganization" has been described as a witch hunt and in a June 2013 interview, **MOORE** unapologetically stated that he had warned the employees, including **WAGNER**, that he would write them up and they would be fired.

58.     **SALYER**, **MOORE** and **BRADY** abused their governmental positions to retaliate against those individuals, including **WAGNER**, who exercised their free speech rights and cooperated in the audit.

59.     **COUNTY**, **MOORE** and **SALYER** have denied **WAGNER** her free speech rights and retaliated against her for her exercise of the same, which is in contravention to the First Amendment of the United States Constitution.

60.     **COUNTY**, **MOORE** and **SALYER** were not acting within their discretionary authority as their conduct did violate clearly established constitutional rights of which a reasonable person would have known. This is particularly so for **SALYER**, who holds a law degree and even teaches an employment law course at a local college.

61.     **SALYER** has also received ill begotten pecuniary gains through **MOORE**, a board member of the Florida Gulf Coast Bank, by way of sale of stocks or other considerations, which results in wire fraud, mail fraud and bank fraud.

62.     **COUNTY**, **SALYER**, **MOORE**, **BERG** and **BRADY** have caused **WAGNER** damages.

### Misclassification & Unpaid Overtime

63.     **WAGNER**'s direct supervisor was **MOORE** and then **SALYER**, and **WAGNER**'s role of administrative specialist was non-management and did not include advising **COUNTY** regarding violations of state or federal wage/hour law.

64.     **WAGNER**'s job duties, in relevant part, included mostly office work over which she possessed no decision-making authority over any matters of significance.

65.     **WAGNER**'s regular daily duties included often began well prior to around 7:30 A.M. and could, and would, often end as late as 8:00 P.M. and include work on weekends.

66.     **COUNTY** demanded that **WAGNER** be available between those hours and **WAGNER** did work for **COUNTY** during that time.

67.     **COUNTY** did not pay **WAGNER** a minimum hourly wage and instead opted to compensate **WAGNER** on a salary basis.

68.     In no way did **WAGNER**'s primary duties with **COUNTY** include the exercise of discretion and independent judgment with respect to matters of significance.

69.     **COUNTY** should have been paying **WAGNER** on an hourly, non-exempt rate during the entire course of her employment with **COUNTY**.

70.     **COUNTY** misclassified **WAGNER** as a FLSA-exempt employee when in fact **WAGNER** was non-exempt.

71.     **WAGNER** regularly worked well in excess of forty (40) hours per week for **COUNTY** without overtime compensation.

72.     **COUNTY** has violated the FLSA.

<u>**COUNT I – VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION VIA 42 U.S.C. §1983- COUNTY**</u>

73.     Plaintiff incorporates by reference Paragraphs 1-62 of this Complaint as though fully set forth below.

74.     At all material times, **WAGNER** was an employee and **COUNTY** was her public employer.

75.     **WAGNER**'s speech involved matters of public concern and her speech was as a concerned, private citizen as the topics of her speech did not involve her job duties, personal grievances or workplace conditions.

76.     **WAGNER**'s disclosures during the public audit were done to raise public awareness regarding the gross misappropriation and mismanagement of public funds.

77.     **WAGNER**'s free speech interests outweighed the **COUNTY**'s interest in silencing **WAGNER** as her speech did not interfere with the effective and efficient fulfillment of the **COUNTY**'s responsibilities and in fact promoted the same.

78.     **WAGNER** was qualified for the positions that he held with **COUNTY**.

79.     **WAGNER** was terminated by **COUNTY** as a direct and proximate result of **WAGNER**'s protected speech.

80.     **COUNTY** has a policy or custom of terminating employees who engaged in free speech it did not find welcome and in fact terminated **WAGNER** and 5 of 6 employees who engaged in similar private protected speech regarding matters of great public concern.

81.     **COUNTY** would not have caused **WAGNER**'s termination in the absence of her engagement in protected speech.

82.     **COUNTY** has violated **WAGNER**'s First Amendment right to freedom of speech.

83.     As a direct and proximate result of the violations **WAGNER**'s free speech rights, as referenced and cited herein, **WAGNER** has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

84.     As a direct and proximate result of the violations of **WAGNER**'s First Amendment rights, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **WAGNER** is entitled to all relief necessary to make her whole as provided for under 42 U.S.C. §1983.

85.     As a direct and proximate result of **COUNTY**'s actions, **WAGNER** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.      Injunctive relief directing Defendant to cease and desist from all retaliation against employees who engage in speech protected by the First Amendment of the United States Constitution;

ii.     Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

    iii.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

    iv.    Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

    v.    Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statutes cited above;

    vi.    Reasonable attorney's fees plus costs;

    vii.    Compensatory damages, and;

    viii.    Such other relief as this Court shall deem appropriate.

## COUNT II – VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION VIA 42 U.S.C. §1983- SALYER

86.    Plaintiff incorporates by reference Paragraphs 1-62 of this Complaint as though fully set forth below.

87.    At all material times, **WAGNER** was an employee and **SALYER** a state actor by virtue of his employment with **COUNTY**.

88.    **SALYER** is sued in his personal capacity.

89.    **WAGNER**'s speech involved matters of public concern and her speech was as a concerned, private citizen as the topics of her speech did not involve her job duties, personal grievances or workplace conditions.

90.    **WAGNER**'s disclosures during the public audit were done to raise public awareness regarding the gross misappropriation and mismanagement of public funds.

91.    **WAGNER**'s free speech interests outweighed the **SALYER**'s interest in silencing **WAGNER** as her speech did not interfere with the effective and efficient fulfillment of

the **COUNTY**'s responsibilities that **SALYER** was charged with fulfilling and in fact her speech promoted the same.

92.    **WAGNER** was qualified for the positions that he held with **COUNTY**.

93.    **WAGNER** was terminated by **SALYER** as a direct and proximate result of **WAGNER**'s protected speech.

94.    **SALYER** introduced a policy or custom of terminating employees who engaged in free speech it did not find welcome and in fact terminated **WAGNER** and 5 of 6 employees who engaged in similar private protected speech regarding matters of great public concern.

95.    **SALYER** would not have caused **WAGNER**'s termination in the absence of her engagement in protected speech.

96.    **SALYER** has violated **WAGNER**'s First Amendment right to freedom of speech.

97.    As a direct and proximate result of the violations **WAGNER**'s free speech rights, as referenced and cited herein, **WAGNER** has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

98.    As a direct and proximate result of the violations of **WAGNER**'s First Amendment rights, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **WAGNER** is entitled to all relief necessary to make her whole as provided for under 42 U.S.C. §1983.

99.    As a direct and proximate result of **SALYER**'s actions, **WAGNER** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.    Injunctive relief directing Defendant to cease and desist from all retaliation against employees who engage in speech protected by the First Amendment of the United States Constitution;

ii.   Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.  Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv.   Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

v.    Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statutes cited above;

vi.   Reasonable attorney's fees plus costs;

vii.  Compensatory damages,

viii. Punitive damages, and;

ix.   Such other relief as this Court shall deem appropriate.

## COUNT III – VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION VIA 42 U.S.C. §1983- MOORE

100.   Plaintiff incorporates by reference Paragraphs 1-62 of this Complaint as though fully set forth below.

101.   At all material times, **WAGNER** was an employee and **MOORE** a state actor by virtue of his employment with **COUNTY**.

16

102.   **MOORE** is sued in his personal capacity.

103.   **WAGNER**'s speech involved matters of public concern and her speech was as a concerned, private citizen as the topics of her speech did not involve her job duties, personal grievances or workplace conditions.

104.   **WAGNER**'s disclosures during the public audit were done to raise public awareness regarding the gross misappropriation and mismanagement of public funds.

105.   **WAGNER**'s free speech interests outweighed the **MOORE**'s interest in silencing **WAGNER** as her speech did not interfere with the effective and efficient fulfillment of the **COUNTY**'s responsibilities that **MOORE** was charged with fulfilling and in fact her speech promoted the same.

106.   **WAGNER** was qualified for the positions that he held with **COUNTY**.

107.   **WAGNER** was targeted for termination by **MOORE** as a direct and proximate result of **WAGNER**'s protected speech.

108.   **MOORE** introduced a policy or custom of terminating employees who engaged in free speech it did not find welcome and in fact set into motion the termination of **WAGNER** and 5 of 6 employees who engaged in similar private protected speech regarding matters of great public concern.

109.   **MOORE** would not have caused **WAGNER**'s termination in the absence of her engagement in protected speech.

110.   **MOORE** has violated **WAGNER**'s First Amendment right to freedom of speech.

111.   As a direct and proximate result of the violations **WAGNER**'s free speech rights, as referenced and cited herein, **WAGNER** has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

112.   As a direct and proximate result of the violations of **WAGNER**'s First Amendment rights, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **WAGNER** is entitled to all relief necessary to make her whole as provided for under 42 U.S.C. §1983.

113.   As a direct and proximate result of **MOORE**'s actions, **WAGNER** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.   Injunctive relief directing Defendant to cease and desist from all retaliation against employees who engage in speech protected by the First Amendment of the United States Constitution;

ii.   Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.   Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv.   Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

v.   Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statutes cited above;

vi.   Reasonable attorney's fees plus costs;

vii.     Compensatory damages,

viii.    Punitive damages, and;

ix.      Such other relief as this Court shall deem appropriate.

### COUNT IV – VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION VIA 42 U.S.C. §1983- BERG

114.     Plaintiff incorporates by reference Paragraphs 1-62 of this Complaint as though fully set forth below.

115.     At all material times, **WAGNER** was an employee and **BERG** a state actor by virtue of her employment with **COUNTY**.

116.     **BERG** is sued in her personal capacity.

117.     **WAGNER**'s speech involved matters of public concern and her speech was as a concerned, private citizen as the topics of her speech did not involve her job duties, personal grievances or workplace conditions.

118.     **WAGNER**'s disclosures during the public audit were done to raise public awareness regarding the gross misappropriation and mismanagement of public funds.

119.     **WAGNER**'s free speech interests outweighed **BERG**'s interest in silencing **WAGNER** as her speech did not interfere with the effective and efficient fulfillment of the **COUNTY**'s responsibilities that **BERG** was charged with fulfilling and in fact her speech promoted the same.

120.     **WAGNER** was qualified for the positions that she held with **COUNTY**.

121.     **WAGNER** was targeted for termination by **BERG** as a direct and proximate result of **WAGNER**'s protected speech.

122.     **BERG** introduced a policy or custom of terminating employees who engaged in free speech it did not find welcome and in fact set into motion the termination of **WAGNER** and

19

5 of 6 employees who engaged in similar private protected speech regarding matters of great public concern.

123.   **BERG** would not have caused **WAGNER**'s termination in the absence of her engagement in protected speech.

124.   **BERG** has violated **WAGNER**'s First Amendment right to freedom of speech.

125.   As a direct and proximate result of the violations **WAGNER**'s free speech rights, as referenced and cited herein, **WAGNER** has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

126.   As a direct and proximate result of the violations of **WAGNER**'s First Amendment rights, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **WAGNER** is entitled to all relief necessary to make her whole as provided for under 42 U.S.C. §1983.

127.   As a direct and proximate result of **BERG**'s actions, **WAGNER** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.      Injunctive relief directing Defendant to cease and desist from all retaliation against employees who engage in speech protected by the First Amendment of the United States Constitution;

ii.     Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had she maintained her position

with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv.    Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

v.    Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statutes cited above;

vi.    Reasonable attorney's fees plus costs;

vii.    Compensatory damages,

viii.    Punitive damages, and;

ix.    Such other relief as this Court shall deem appropriate.

## COUNT V – VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION VIA 42 U.S.C. §1983- BRADY

128.    Plaintiff incorporates by reference Paragraphs 1-62 of this Complaint as though fully set forth below.

129.    At all material times, **WAGNER** was an employee and **BRADY** a state actor by virtue of her employment with **COUNTY**.

130.    **BRADY** is sued in her personal capacity.

131.    **WAGNER**'s speech involved matters of public concern and her speech was as a concerned, private citizen as the topics of her speech did not involve her job duties, personal grievances or workplace conditions.

132.    **WAGNER**'s disclosures during the public audit were done to raise public awareness regarding the gross misappropriation and mismanagement of public funds.

133.   **WAGNER**'s free speech interests outweighed **BRADY**'s interest in silencing **WAGNER** as her speech did not interfere with the effective and efficient fulfillment of the **COUNTY**'s responsibilities that **BRADY** was charged with fulfilling and in fact her speech promoted the same.

134.   **WAGNER** was qualified for the positions that she held with **COUNTY**.

135.   **WAGNER** was targeted for termination by **BRADY** as a direct and proximate result of **WAGNER**'s protected speech.

136.   **BRADY** introduced a policy or custom of terminating employees who engaged in free speech it did not find welcome and in fact set into motion the termination of **WAGNER** and 5 of 6 employees who engaged in similar private protected speech regarding matters of great public concern.

137.   **BRADY** would not have caused **WAGNER**'s termination in the absence of her engagement in protected speech.

138.   **BRADY** has violated **WAGNER**'s First Amendment right to freedom of speech.

139.   As a direct and proximate result of the violations **WAGNER**'s free speech rights, as referenced and cited herein, **WAGNER** has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

140.   As a direct and proximate result of the violations of **WAGNER**'s First Amendment rights, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **WAGNER** is entitled to all relief necessary to make her whole as provided for under 42 U.S.C. §1983.

141.   As a direct and proximate result of **BRADY**'s actions, **WAGNER** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future

employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.      Injunctive relief directing Defendant to cease and desist from all retaliation against employees who engage in speech protected by the First Amendment of the United States Constitution;

ii.     Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.    gFront pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv.    Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

v.     Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statutes cited above;

vi.    Reasonable attorney's fees plus costs;

vii.   Compensatory damages,

viii.  Punitive damages, and;

ix.    Such other relief as this Court shall deem appropriate.

### COUNT VI – VIOLATION OF 18 U.S.C. §1964(c)- CIVIL RICO- SALYER

142.    Plaintiff incorporates by reference Paragraphs 1-62 of this Complaint as though fully set forth below.

143.    **SALYER** has engaged in conduct of a RICO enterprise through a pattern of racketeering activity.

144.    **SALYER** has committed of two or more predicate acts of racketeering activity within the preceding ten-year time span.

145.    **SALYER**'s predicate acts are related to one another.

146.    **SALYER**'s predicate acts demonstrate criminal conduct of a continuing nature.

147.    **SALYER** has engaged in "racketeering activity" by virtue of his violation of the criminal statutes set forth in 18 U.S.C. §1961(1)(B), which include the statutes criminalizing mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), obstruction of justice (18 USCS §1503, 18 USCS § 1511), witness tampering (18 USCS § 1512) and retaliation against a witness (18 USCS §1513).

148.    **SALYER** did conspire with **MOORE, BERG** and Kottkamp and did devise a scheme to defraud for obtaining money by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, writings for the purpose of executing said scheme.

149.    **SALYER** did conspire with **MOORE, BERG** and Kottkamp and also did devise and/or intended to devise a scheme to defraud for obtaining money by means of false or fraudulent pretenses, representations and attempted so to do through a post office or authorized depository for mail to be sent or delivered by the Postal Service, deposited or caused to be deposited a matter, thing or paper sent or delivered by any private or commercial interstate carrier, and took and/or received therefrom, a matter, thing or paper and knowingly caused to be delivered by mail or such carrier according to the direction thereon.

150.   Furthermore, **SALYER** did conspire with **MOORE, BERG** and **BRADY** to obstruct justice, tamper with a witness and retaliate against a witness by terminating those who opposed their criminal enterprise, including **WAGNER**.

151.   Obstruction of justice (18 USCS §1503, 18 USCS § 1511), witness tampering (18 USCS § 1512) and retaliation against a witness (18 USCS §1513) are independently wrongful acts under RICO (§1961(1)).

152.   **SALYER**, in concert with **MOORE, BERG** and **BRADY**, did obstruct justice, tamper with a witness and retaliate against a witness by terminating those who opposed their criminal enterprise, including **WAGNER**.

153.   **WAGNER**'s termination was calculated to prevent her from reporting or aiding an investigation into her employer's RICO violations (thereby obstructing justice, tampering with a witness and retaliating against a witness).

154.   **SALYER**, in furtherance of his conspiracy with **MOORE**, **BERG**, **BRADY** and Kottkamp, did cause damage to **WAGNER** by his racketeering activity.

155.   **WAGNER** has suffered direct injury as a result of her opposition to **SALYER**'s RICO enterprise and disclosure of the same as a cooperating witness.

156.   **WAGNER**'s injury is to "business or property," and her injury was by reason of **SALYER**'s substantive RICO violation.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.   Injunctive relief directing Defendant to cease and desist from all RICO activity;

ii.   Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had she maintained her position

with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv.    Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

v.    Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statutes cited above;

vi.    Reasonable attorney's fees plus costs;

vii.    Compensatory damages,

viii.    Treble damages, and;

ix.    Such other relief as this Court shall deem appropriate.

### COUNT VII – VIOLATION OF 18 U.S.C. §1964(c)- CIVIL RICO- MOORE

157.    Plaintiff incorporates by reference Paragraphs 1-62 of this Complaint as though fully set forth below.

158.    **MOORE** has engaged in conduct of a RICO enterprise through a pattern of racketeering activity.

159.    **MOORE** has committed of two or more predicate acts of racketeering activity within the preceding ten-year time span.

160.    **MOORE**'s predicate acts are related to one another.

161.    **MOORE**'s predicate acts demonstrate criminal conduct of a continuing nature.

162.    **MOORE** has engaged in "racketeering activity" by virtue of his violation of the criminal statutes set forth in 18 U.S.C. §1961(1)(B), which include the statutes criminalizing

mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), obstruction of justice (18 USCS §1503, 18 USCS § 1511), witness tampering (18 USCS § 1512) and retaliation against a witness (18 USCS §1513).

163.    **MOORE** did conspire with **SALYER, BERG** and Kottkamp and did devise a scheme to defraud for obtaining money by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, writings for the purpose of executing said scheme.

164.    **MOORE** did conspire with **SALYER, BERG** and Kottkamp and also did devise and/or intended to devise a scheme to defraud for obtaining money by means of false or fraudulent pretenses, representations and attempted so to do through a post office or authorized depository for mail to be sent or delivered by the Postal Service, deposited or caused to be deposited a matter, thing or paper sent or delivered by any private or commercial interstate carrier, and took and/or received therefrom, a matter, thing or paper and knowingly caused to be delivered by mail or such carrier according to the direction thereon.

165.    Furthermore, **MOORE** did conspire with **SALYER, BERG** and **BRADY** to obstruct justice, tamper with a witness and retaliate against a witness by terminating those who opposed their criminal enterprise, including **WAGNER**.

166.    Obstruction of justice (18 USCS §1503, 18 USCS § 1511), witness tampering (18 USCS § 1512) and retaliation against a witness (18 USCS §1513) are independently wrongful acts under RICO (§1961(1)).

167.     **MOORE**, in concert with **SALYER, BERG** and **BRADY**, did obstruct justice, tamper with a witness and retaliate against a witness by terminating those who opposed their criminal enterprise, including **WAGNER**.

168.     **WAGNER**'s termination was calculated to prevent her from reporting or aiding an investigation into her employer's RICO violations (thereby obstructing justice, tampering with a witness and retaliating against a witness).

169.     **MOORE**, in furtherance of his conspiracy with **SALYER**, **BERG**, **BRADY** and Kottkamp, did cause damage to **WAGNER** by his racketeering activity.

170.     **WAGNER** has suffered direct injury as a result of her opposition to **MOORE**'s RICO enterprise and disclosure of the same as a cooperating witness.

171.     **WAGNER**'s injury is to "business or property," and her injury was by reason of **MOORE**'s substantive RICO violation.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.      Injunctive relief directing Defendant to cease and desist from all RICO activity;

ii.     Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv.     Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

v.   Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statutes cited above;

vi.   Reasonable attorney's fees plus costs;

vii.   Compensatory damages,

viii.   Treble damages, and;

ix.   Such other relief as this Court shall deem appropriate.

### COUNT VIII – VIOLATION OF 18 U.S.C. §1964(c)- CIVIL RICO- BRADY

172.   Plaintiff incorporates by reference Paragraphs 1-62 of this Complaint as though fully set forth below.

173.   **BRADY** has engaged in conduct of a RICO enterprise through a pattern of racketeering activity.

174.   **BRADY** has committed of two or more predicate acts of racketeering activity within the preceding ten-year time span.

175.   **BRADY**'s predicate acts are related to one another.

176.   **BRADY**'s predicate acts demonstrate criminal conduct of a continuing nature.

177.   Furthermore, **BRADY** did conspire with **SALYER**, **MOORE** and **BERG** to obstruct justice, tamper with a witness and retaliate against a witness by terminating those who opposed their criminal enterprise, including **WAGNER**.

178.   Obstruction of justice (18 USCS §1503, 18 USCS § 1511), witness tampering (18 USCS § 1512) and retaliation against a witness (18 USCS §1513) are independently wrongful acts under RICO (§1961(1)).

179. **BRADY**, in concert with **SALYER**, **MOORE** and **BERG**, did obstruct justice, tamper with a witness and retaliate against a witness by terminating those who opposed their criminal enterprise, including **WAGNER**.

180. **WAGNER**'s termination was calculated to prevent her from reporting or aiding an investigation into her employer's RICO violations (thereby obstructing justice, tampering with a witness and retaliating against a witness).

181. **BRADY**, in furtherance of his conspiracy with **SALYER**, **MOORE**, **BERG** and Kottkamp, did cause damage to **WAGNER** by his racketeering activity.

182. **WAGNER** has suffered direct injury as a result of her opposition to **BRADY**'s RICO enterprise and disclosure of the same as a cooperating witness.

183. **WAGNER**'s injury is to "business or property," and her injury was by reason of **BRADY**'s substantive RICO violation.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.      Injunctive relief directing Defendant to cease and desist from all RICO activity;

ii.     Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv.     Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

v.      Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statutes cited above;

vi.     Reasonable attorney's fees plus costs;

vii.    Compensatory damages,

viii.   Treble damages, and;

ix.     Such other relief as this Court shall deem appropriate.

## COUNT IX – VIOLATION OF FLORIDA'S PUBLIC WHISTLEBLOWER ACT (FPWA)- COUNTY

184.    Plaintiff incorporates by reference Paragraphs 1-42, 49-58 and 62 of this Complaint as though fully set forth below.

185.    This Count is pled in the alternative.

186.    This Count is timely brought under F.S. §112.3187(8)(c) as **WAGNER** has exhausted all available administrative remedies.

187.    At all material times, **WAGNER** was an employee and **COUNTY** was her employer covered by and within the meaning of the FPWA.

188.    **WAGNER** was qualified for the positions that she held with **COUNTY**.

189.    **WAGNER** did engage in statutorily protected activity.

190.    **WAGNER** did make several disclosures of **COUNTY**'s violations of federal, state, and/or local laws, rules, and/or regulations committed which created and presented a substantial and specific danger to the public's health, safety, or welfare.

191.    **WAGNER** did make several disclosures of **COUNTY**'s gross mismanagement, malfeasance, misfeasance, nonfeasance, gross waste of public funds, and/or neglect of duty.

192.    **WAGNER** did suffer adverse employment action, which is causally linked to her engagement in statutorily protected activity.

31

193.   **WAGNER** made her disclosures on her own initiative in a written or signed complaint and when she was requested to participate in an investigation.

194.   **WAGNER**'s complaints constitute a protected activity because her complaints were concerning an unlawful activity of **COUNTY**.

195.   Said protected activity was the proximate cause of **COUNTY**'s negative employment actions against **WAGNER** including changed working conditions, harsh performance reviews, discipline and ultimately termination.

196.   Instead of investigating **WAGNER**'s complaints and lauding her honest statements provided during an investigation, **COUNTY** retaliated against **WAGNER** via changed working conditions, harsh performance reviews, discipline, and termination.

197.   The acts, failures to act, practices and policies of **COUNTY** set forth above constitute retaliation in violation of the FPWA.

198.    As a direct and proximate result of the violations of the FPWA, as referenced and cited herein, **WAGNER** has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

199.   As a direct and proximate result of the violations of the FPWA, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, **WAGNER** is entitled to all relief necessary to make her whole as provided for under the FPWA.

200.   As a direct and proximate result of **COUNTY**'s actions, **WAGNER** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.  Injunctive relief directing the Defendant to cease and desist from all retaliation against employees who engage in statutorily protected acts;

ii.  Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.  Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv.  Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

v.  Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statute cited above;

vi.  Reasonable attorney's fees plus costs;

vii.  Compensatory damages, and;

viii.  Such other relief as this Court shall deem appropriate.

## COUNT X – VIOLATION OF THE FLSA- COUNTY

201.  Plaintiff incorporates by reference Paragraphs 1-12 and 63-72 of this Complaint as though fully set forth below.

202.  **WAGNER** was a covered, non-exempt employee under the FLSA at all times during her employ with **COUNTY**.

203.  **COUNTY** was required by the FLSA to pay **WAGNER** at least time and one-half for all hours worked by **WAGNER** over forty in a week.

204.    **COUNTY** had operational control over all aspects of **WAGNER**'s day-to-day functions during her employment, including compensation.

205.    **COUNTY** was **WAGNER**'s "employer" and is liable for violations of the FLSA in this case.

206.    **COUNTY** violated the FLSA by failing to pay **WAGNER** at least one-half for all hours worked over forty in a week.

207.    **COUNTY** has willfully violated the FLSA in refusing to pay **WAGNER** proper overtime for all hours worked by her over forty in a week.

208.    As a result of the foregoing, **WAGNER** has suffered damages of lost wages.

209.    **COUNTY** is the proximate cause of **WAGNER**'s damages.

**WHEREFORE,** Plaintiff prays that this Honorable Court enter a Judgment in her favor and against **COUNTY** for an amount consistent with evidence, together with liquidated damages, the costs of litigation, interest, and reasonable attorneys' fees.

## DEMAND FOR JURY TRIAL IS HEREBY MADE.

Respectfully submitted,


Dated: March 13, 2014                    **s/ Benjamin H. Yormak**
                                         Benjamin H. Yormak
                                         Florida Bar Number 71272
                                         Trial Counsel for Plaintiff
                                         Yormak Employment & Disability Law
                                         9990 Coconut Road
                                         Bonita Springs, Florida 34135
                                         Telephone: (239) 985-9691
                                         Fax: (239) 288-2534
                                         Email: byormak@yormaklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: None.

s/ Benjamin H. Yormak
Benjamin H. Yormak
Florida Bar Number 71272
Trial Counsel for Plaintiff
Yormak Employment & Disability Law
9990 Coconut Road
Bonita Springs, Florida 34135
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com