UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LISA WAGNER,

        Plaintiff,

v.                                Case No:   2:14-cv-29-FtM-38CM

LEE COUNTY, FLORIDA BOARD
OF COUNTY COMMISSIONERS, a
political subdivision of the State of
Florida, GLEN SALYER, an
individual, JAMES MOORE, an
individual, JENNIFER BERG, an
individual, and CHRISTINE BRADY,
an individual,

        Defendants.

_____/

**<u>ORDER</u>**[1]

     This matter comes before the Court on Defendants Lee County, Florida Board of

County Commissioners, Glen Salyer, James Moore, Jennifer Berg, and Christine Brady's

Motion to Dismiss the Amended Complaint (Doc. #32) filed on May 12, 2014.  Plaintiff

Lisa Wagner filed a Response to Defendants' Motion to Dismiss (Doc. #34) on May 23,

2014.  Thus, the motion is ripe for review.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

# **FACTUAL BACKGROUND**[2]

Defendant Lee County, Florida Board of County Commissioners ("Defendant County") hired Plaintiff on or about January 26, 2012, to work as an administrative specialist in its Economic Development Office ("EDO").  (Doc. #16, ¶ 11).  The EDO "has multiple responsibilities to promote, coordinate and, monitor economic development, recruitment, marketing, financial, and administrative functions in Lee County."  (Doc. #16, ¶ 14).  Defendants Glen Salyer, James Moore, Jennifer Berg, and Christine Brady are all former or current employees of the EDO or Defendant County.  (Doc. #16, ¶¶ 4-7).

Lee County and the State of Florida each award grants to the EDO to disburse accordingly.  (Doc. #16, ¶ 15).  Sometime during her employment, Plaintiff "became aware of the County's extensive improper use of grant and loan programs through the Lee County Economic Development Office (EDO)."  (Doc. #16, ¶ 13).  After receiving several complaints regarding this conduct, an internal audit was launched (the "Audit").  (Doc. #16, ¶ 16).  Lawrence M. Haut, a Senior Internal Auditor at the Lee County Clerk of Court (the "Auditor") spearheaded this effort.  (Doc. #16, ¶¶ 16-17).  Plaintiff, along with five other employees, voluntarily participated in the Audit.  (Doc. #16, ¶ 18).

Plaintiff's participation included providing written statements in April and May 2013 and taking part in several interviews.  (Doc. #16, ¶ 19).  She disclosed numerous instances of Defendants allegedly misappropriating grant monies and loans to the

---

[2] The Court presents the facts as alleged in Plaintiff's Amended Complaint (Doc. #16).  At this stage, the Court must assume the facts set forth in the Amended Complaint are true.  See Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453 (2006) (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1281 n.1 (11th Cir. 2006).  Since the Court accepts Plaintiff's factual allegations as true, "the facts" as recited in this Order may not be the actual facts later proven.

Auditor.[3]  One such instance concerned Defendant County awarding a $5 million grant to VR Laboratories LLC ("VR Labs") for it to construct a headquarters and manufacturing plant in Lee County.  (Doc. #16, ¶ 22).  According to Plaintiff, Defendant Glen Slayer, then Assistant to the County Manager, "intentionally provided misinformation in order to have the VR Labs grant approved" because he "ha[d] a close, personal relationship with VR Labs CEO Jeffrey Kottkamp." (Doc. #16, ¶¶ 24, 26).  Defendant Salyer purportedly wrote the fraudulent grant proposal "despite having inside knowledge that VR Labs did not intend to honor its commitments to the taxpayers of Lee County."  (Doc. #16, ¶ 24). Plaintiff also revealed that Defendants Salyer and James Moore, then EDO Director, received "personal financial benefits" from VR Labs receiving the grant.  (Doc. #16, ¶ 27).

Plaintiff also disclosed to the Auditor information regarding a 2010 loan of $75,000 to a business owned by the husband of Defendant Jennifer Berg, who was then EDO's Marketing Manager.  (Doc. #16, ¶ 33).  According to Plaintiff, Defendant Berg's husband received multiple business contracts but little, if any, accounting was recorded for the hours he spent on those projects or what he did.  (Doc. #16, ¶¶ 33-37).  Plaintiff further alleges that Defendants Moore and Salyer ignored Defendant Berg's actions in order to further their own pecuniary gain.  (Doc. #16, ¶¶ 33-38).

After the Audit, Defendants Moore and Salyer allegedly retaliated against Plaintiff for disclosing their alleged malfeasance.  (Doc. #16, ¶ 52).  This alleged retaliation included criticism of Plaintiff's job performance and verbal abuse, much of which referenced statements she made to the Auditor.  (Doc. #16, ¶¶ 49-52).  Also after the

---

[3] At some point, Plaintiff also reported these matters to her supervisor.  (Doc. #16, ¶ 19)

3

Audit, Defendant Salyer became the interim EDO Director;[4] and on October 30, 2013, Defendants Salyer, Moore, Berg, and Brady discharged Plaintiff.  (Doc. #16, ¶ 53).  Within the first ten weeks of Defendant Salyer's tenure as the interim EDO Director, he discharged five of the six employees who spoke with the Auditor.  (Doc. #16, ¶¶ 51, 54).

On March 13, 2014, Plaintiff commenced this ten-count action against Defendants for violations of the First Amendment to the United States Constitution (Counts I-V), the federal Racketeer Influenced and Corrupt Organizations Act (Counts VI-VIII), Florida's Public Whistleblower Act (Count IX), and the Fair Labor Standards Act (Count X).  (Doc. #1; Doc. #16).  Currently before the Court is Defendants' Motion to Dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. #32).

## STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the [p]laintiff's [c]omplaint to determine whether it sets forth sufficient allegations to establish a claim for relief."  House v. Bankers Ins. Co., 43 F. Supp. 2d 1329, 1330 (M.D. Fla. 1999).  The Supreme Court has stated that "[t]o survive a motion to dismiss, a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The issue in resolving such a motion is not whether

---

[4] Defendant Salyer served as the Assistant to the County Manager and then as the interim EDO Director until on or about January 22, 2014.  (Doc. #16, ¶ 23).  Defendant Salyer became the interim EDO Director after Defendant Moore retired from that position.  (Doc. #16, ¶ 23).

the non-movant will ultimately prevail, but whether the non-movant is entitled to offer evidence to support his or her claims.  Id. at 678-79.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679 (citations omitted).  Although legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations. See id.  Based upon these allegations, the court will determine whether the plaintiff's pleadings plausibly give rise to an entitlement to relief.  See id.  Legal conclusions couched as factual allegations are not sufficient, nor are unwarranted inferences, unreasonable conclusions, or arguments.  See Twombly, 550 U.S. at 555.  Moreover, the plaintiff does not have to show a likelihood of success; rather, the complaint must merely allege - directly or indirectly - each element of a "viable legal theory."  Id. at 562-63.

## DISCUSSION

**I.  Counts I-V: Violation of First Amendment Free Speech Rights Against all Defendants**

In Counts I-V of the Amended Complaint, Plaintiff alleges that Defendants unlawfully discharged her in retaliation for exercising her First Amendment free speech rights during the Audit.  (Doc. #16, ¶¶ 73-141).  Plaintiff brings these claims under 42 U.S.C. § 1983.

Public employees, like Plaintiff, may bring First Amendment retaliation claims pursuant to 42 U.S.C. § 1983.  See Randall v. Scott, 610 F.3d 701, 703 (11th Cir. 2010). Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must

establish that (1) a defendant deprived her of a right secured under the Constitution or federal law; and (2) such deprivation occurred under color of state law. See Arrington v. Cobb Cnty, 19 F.3d 857, 872 (11th Cir. 1998). The constitutional right at issue in this case is Plaintiff's right to free speech under the First Amendment.

A "public employee's right to freedom of speech is not absolute." Rankin v. McPherson, 483 U.S. 378 (1987). Nevertheless, "public employees do not surrender all their First Amendment rights by reasons of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006) (citations omitted). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." Id. at 419 (citation omitted). Accordingly, to state a claim against a government-employer for retaliation against constitutionally protected speech, a plaintiff must allege, as a threshold, that she "spoke as a citizen on a matter of public concern." Garcetti, 547 U.S. at 418 (emphasizing that a public employee must speak both on a matter of public concern and as a private citizen to enjoy First Amendment free speech protections); see also Boyce v. Andrew, 510 F.3d 1333, 1342 (11th Cir. 2007). In this case, Defendants only argue that Plaintiff has insufficiently pled that she spoke as a citizen and not as a public employee; therefore, the Court will only address the first part of her dual requirement.

The Supreme Court has definitively held "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their

communications from employer discipline." Garcetti, 547 U.S. at 424.   Thus, when determining whether a plaintiff spoke as a citizen on a matter of public concern, the controlling inquiry is whether the plaintiff's speech "owes its existence to [her] professional responsibilities."   See Brown v. Sch. Bd. of Orange Cnty., Fl., 459 F. App'x 817, 820 (11th Cir. 2012) (citing Abdur–Rahman, 567 F.3d at 1282-83)).   The Eleventh Circuit has identified the following non-dispositive factors as relevant to this inquiry:   (1) the plaintiff's actual job duties; (2) whether the speech occurred at the workplace or in public; and (3) whether the speech concerned the subject matter of the plaintiff's employment.   See Garcetti, 547 U.S. at 424; Abdur-Rahman, 567 F.3d at 1282-83.

As previously indicated, Defendants argue Plaintiff's speech does not warrant First Amendment protection because she spoke as a public employee during the Audit of her employer.   (Doc. #32 at 6).   Defendants continue that only "by virtue of" her employment at the EDO did Plaintiff become privy to any information on Defendants' alleged misuse of grants and loans.   (Doc. #32 at 6).   Plaintiff opposes Defendants' position on the grounds that her speech was unrelated to her specific job duties or position and the fact she made her speech at the workplace is not dispositive.   (Doc. #34 at 10).

Based on the factual allegations in the Amended Complaint, Plaintiff falls short of pleading that her speech did not derive from her professional responsibilities.   In the Amended Complaint, Plaintiff avers that (1) her "speech in regard to the above was speaking as a private citizen and were a matter of public concern"; (2) "[s]peaking on these above topics was not part of [her] official duties"; and (3) her "speech was not make in her capacity as a public employee but rather as a concerned citizen who possessed knowledge of [Defendant] County malfeasance."   (Doc. #16, ¶¶ 43-46).   These

statements are nothing more than legal conclusions couched as factual allegations for which the Court is not bound to accept as true.  See Papasan v. Allain, 478 U.S. 265, 286 (1986).  It is well settled that

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Twombly, 550 U.S. at 555 (internal citations omitted).  Consequently Plaintiff's vain attempt to defeat dismissal by stating that "allegations must be taken as true and as a result [her] speech was very clearly as a citizen" is unconvincing.  (Doc. #34 at 10). Plaintiff cannot make such a conclusory statement and declare victory.

Plaintiff's attempt to shield the thinness of her allegations by noting that her speech concerned public corruption is likewise ineffective.  Although speech regarding government corruption is commonly of public concern, it alone does not trigger First Amended protection; the plaintiff must also show that she spoke as a citizen.  See Garcetti, 547 U.S. at 423.  As noted, Defendants do not dispute Plaintiff spoke on matters of public concern; rather, they argue she did not speak as a private citizen.  Consequently, Plaintiff's argument is immaterial to withstanding the instant Motion.

Turning to the factors enumerated above, Plaintiff's speech during the Audit did not occur outside the scope of her employment responsibilities.  See e.g., Phillips v. City of Dawsonville, 499 F.3d 1239, 1242-43 (11th Cir. 2007) (finding that a city clerk acted pursuant to her official duties when she made statements about the mayor's misuse of city funds); D'Angelo v. Sch. Bd. of Polk Cnty., 497 F.3d 1203, 1210 (11th Cir. 2007)

(finding a school principal's speech regarding converting to a charter school to be unprotected); Battle v. Bd. of Regents of Ga., 468 F.3d 755, 760-62 (11th Cir. 2006) (finding a financial aid counselor's speech to school officials about inaccuracies and fraud in student files to be unprotected).   By Plaintiff's own admission, she learned of Defendants' alleged misappropriation of grants and loans during her tenure as an administrative specialist at the EDO.   (Doc. #16, ¶ 13).   Also, the Audit was spearheaded by the County itself; therefore, Plaintiff's participation is not akin to her engaging in a civic discussion or using a public platform (e.g., local newspaper or radio) to reveal Defendants' alleged conduct.   And finally, there are no facts to suggest Plaintiff spoke to anyone other than the Auditor and her unnamed supervisor about the alleged inappropriate conduct.

The case Carter v. Inc. Village of Ocean Beach, 415 F. App'x 290, 293 (2d Cir. 2011) is instructive here.   In Carter, the Second Circuit held police officers who reported their supervisors' misconduct up the chain of command did not engage in constitutionally protected speech.   The court noted the alleged misconduct was known to plaintiffs "only by virtue of their jobs as police officers," and found, because the awareness of the misconduct arose on the job, the police officers' reporting was pursuant to employment responsibilities and not as citizens on matters of public concern.   Id.   Although Carter is not directly on point to the matter at hand, it is relevant to the extent that Plaintiff effectively reported misconduct internally "up the chain of command" to the Auditor and her supervisor.   In other words, there is no reason to believe Plaintiff's speech was anything other than an internal complaint, and therefore, her speech was that of a public employee and not a citizen.   See also Derrig v. City of Marco Island, No. 2:12-cv-464, 2013 WL 3070849, at *3 (M.D. Fla. June 17, 2013) (citing to Carter with approval).

Accordingly, the Court dismisses Counts I-V of the Amended Complaint.[5]

## II. Counts VI-VIII: Racketeering Influenced and Corrupt Organizations Act Against Defendants Salyer, Moore, and Brady

Next, Plaintiff claims Defendants Salyer, Moore, and Brady violated the federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* because they acted in concert to discharge her so as to prevent her from reporting or aiding any investigation into their illegal activities. (Doc. #16, ¶¶ 152-53, 165-68, 179-80).

Pursuant to 18 U.S.C. § 1962(c), it is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." 18 U.S.C. § 1962(c). Thus, to state an actionable civil RICO claim under § 1962(c), the plaintiff must satisfy four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Williams v. Mohawk Indus., 465 F.3d 1277, 1282 (11th Cir. 2006) (citation and internal quotation marks omitted).

In addition to the § 1962(c) elements, a plaintiff asserting a civil RICO claim must satisfy the requirements of 18 U.S.C. § 1964(c). Section 1964(c) states that "[a]ny person injured in his business or property by reason of" RICO's substantive provisions has the right to "recover threefold the damages he sustains. . . . " 18 U.S.C. § 1964(c). Thus, § 1964(c) requires the plaintiff to show (1) a requisite injury to "business or property"; and (2) that such injury was "by reason of" the substantive RICO violation. Mohawk Indus.,

---

[5] Since Plaintiff has failed to set forth actionable First Amendment retaliation claims against Defendants, the Court will not address the issue of qualified immunity.

465 F.3d at 1282 (quoting 18 U.S.C. § 1964(c)).   It is in § 1964(c)'s "by reason of" requirement on which the Court focuses its analysis.

"The 'by reason of' requirement implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause." Mohawk Indus., 465 F.3d at 128 (citing Trollinger v. Tyson Foods, 370 F.3d 602, 612 (6th Cir. 2004) ("RICO's civil-suit provision imposes two distinct but overlapping limitations on claimants—standing and proximate cause.") (other citations omitted)); see also Sedima, S.P.R.L. v. Imrex Co. Inc., 473 U.S. 479, 496 (1985) (concluding "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation"). The Eleventh Circuit directs courts to "scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations." Corcel Corp., Inc. v. Ferguson Enters., Inc., 551 F. App'x 571, 575 (11th Cir. 2014); see also Mohawk Indus., 465 F.3d at 1287.

Plaintiff alleges she suffered direct injury "as a result of her opposition to [Defendants Salyer, Moore, and Brady's] enterprise and disclosure of the same as a cooperating witness." (Doc. #16, ¶ 155).   This allegation is insufficient to establish a causal nexus between her injury and the racketeering.   The case O'Malley v. O'Neill, 887 F.2d 1557, 1561 (11th Cir. 1989) is instructive on this point.   In O'Malley, the Eleventh Circuit held:

> The plaintiffs have not established that causal nexus.  Neither in their complaint nor in their RICO Case Statement do plaintiffs demonstrate that they were injured by the alleged acts of [fraud].  Instead, they allege that their injury arose as a result of their refusal to participate in or to conceal the fraudulent scheme.  Therefore, by their own allegations, the

> proximate cause of the plaintiffs' injuries was O'Neill's decision to fire them for refusing to participate in or to conceal the scheme-not the mail fraud scheme itself.

887 F.2d at 1561.   As in O'Malley, Plaintiff's alleged injury resulted from Defendants Salyer, Moore, and Brady's decision to discharge her.   In other words, her injury did not result from their alleged racketeering activities but from Plaintiff's actions in opposition to and disclosure of their conduct.   (Doc. #16, ¶ 155).   Plaintiff's injury did not result "by reason of" the RICO violation, "but rather from the tangentially related decision to fire [her]." O'Malley, 887 F.2d at 1563.   Thus, even viewing the facts in a light most favorable to Plaintiff, she has insufficiently pled that Defendants' alleged racketeering activities proximately caused her alleged injuries to withstand dismissal.   See Robinson v. Jewish Ctr. Towers, Inc., 993 F. Supp. 1475, 1476 (M.D. Fla. 1998) ("[T]he court will not accept, without more, conclusory allegations or legal conclusions masquerading as factual conclusions.").

Accordingly, the Court dismisses Counts VI, VII, and VIII of the Amended Complaint.[6]

## III. Count X: Violation of the Fair Labor Standards Act

In Count X, Plaintiff seeks relief under the Fair Labor Standards Act ("FLSA") for uncompensated overtime.   (Doc. #16, ¶¶ 201-09).   The FLSA requires employers to pay employees one-and-one-half times their normal hourly rate for each hour worked over forty hours in a workweek.   See 29 U.S.C. § 207(a)(1).   The FLSA exempts certain employees from this requirement, including employees "employed in a bone fide

---

[6] Since Plaintiff so clearly failed to plead a proximate causal relationship between Plaintiff's injured and Defendant's alleged racketeering activities, the Court need not review the four elements of § 1964(c).

executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). These exemptions, however, are narrowly construed and "applied only to those clearly and unmistakably within the terms and spirit of the exemption." Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1269 (11th Cir. 2008).

Here, Plaintiff alleges that Defendant County misclassified her as an exempt employee under the "administrative exemption" and thus failed to pay her overtime for the hours she worked.  (Doc. #16, ¶¶ 206-09).  Defendant County, however, maintains that Plaintiff falls under the administrative exemption because she identifies herself as an administrative specialist.  (Doc. #32 at 19).  Defendant County continues that the Amended Complaint is devoid of any factual allegations demonstrating why Plaintiff is a non-exempt employee under the FLSA.  (Doc. #32 at 19).

Accepting the factual allegations as true, the Court finds that Plaintiff has adequately alleged that Defendant County misclassified her as an exempt employee.  As an administrative specialist, Plaintiff had no management responsibilities or decision-making authority; and her primary job duties did not include her exercising discretion and independent judgment with respect to matters of significance.  (Doc. #16, ¶ 63-64, 68-69).  By alleging these facts, Plaintiff has provided a sufficient factual basis to support her legal conclusion that she was a non-exempt employee.  See Tabora v. GC Realty Advisors, LLC, No. 12-80526-CIV-MARRA, 2012 WL 3614414, at *3 (S.D. Fla. Aug. 20, 2012) (denying a motion to dismiss because the plaintiff sufficiently pled she was an non-exempt employee where she had no managerial authority and could not fire or hire employees).  Additionally, Plaintiff correctly points out Defendant County alone must prove the applicability of an exemption.  See Gregory v. First Title of Am., Inc., 555 F.3d

13

1300, 1302 (11th Cir. 2009) (citations omitted).   Accordingly, because Plaintiff's FLSA claim has been pled with the requisite level of specificity, the Court denies the Motion to Dismiss as to Count X.[7]

**IV. Count IX: Florida Public Sector Whistleblower's Act against Defendant County**

In Count IX, Plaintiff alleges Defendant County violated Florida's Public Whistleblower Act when it discharged her in retaliation for her disclosures to the Auditor. (Doc. #16, ¶¶ 184-200).  Defendant County has moved to dismiss this claim on grounds that, because Counts I-VIII should be dismissed as a matter of law, the Court does not have supplemental jurisdiction over Plaintiff's state law claim for whistleblower protection. (Doc. #32 at 18).  This position is unpersuasive because, as noted above, Plaintiff's FLSA claim is still alive.  Accordingly, the Court denies Defendants' Motion to Dismiss as to Count IX.

In conclusion, the Court grants in part and denies in part Defendants' Motion to Dismiss (Doc. #32).

Accordingly, it is

**ORDERED:**

(1) Defendants' Motion to Dismiss the Amended Complaint (Doc. #32) is

**GRANTED in part and DENIED in part**.

a.  Counts I, II, III, IV, V, VI, VII, and VIII are **DISMISSED with prejudice**.

b.  The only remaining claims in this action are Counts IX and X.

---

[7] In the alternative, Defendant County states "the Court should propound interrogatories upon Plaintiff aimed at determining whether she is an FLSA-exempt employee." (Doc. #32 at 19 n.7).  The Court declines to do so, as the parties can flesh out this issue through discovery.

(2) Defendants shall file an answer to the Amended Complaint ([Doc. #16](#)) within

twenty-one (21) days of the date of this Order.

**DONE** and **ORDERED** in Fort Myers, Florida on this 23rd day of July, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record