UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LISA WAGNER,

    Plaintiff,

v.                                                                                                       Case No: 2:14-cv-29-FtM-38CM

LEE COUNTY, FLORIDA BOARD
OF COUNTY COMMISSIONERS, a
political subdivision of the State of
Florida, GLEN SALYER, an
individual, JAMES MOORE, an
individual, JENNIFER BERG, an
individual, and CHRISTINE BRADY,
an individual,

    Defendants.
_____/

**ORDER**[1]

This matter comes before the Court on Plaintiff Lisa Wagner's Motion for Reconsideration (Doc. #39) filed on July 30, 2014. Defendants Lee County, Florida Board of County Commissioners, Glen Salyer, James Moore, Jennifer Berg, and Christine Brady filed a Response in Opposition to Plaintiff's Motion for Reconsideration (Doc. #40) on August 7, 2014. Plaintiff's motion is now ripe for review.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

**BACKGROUND**

The background of this case has been recited at length in an earlier opinion (Doc. #38) and need not be repeated in detail here.  In brief, Defendant Lee County, Florida Board of County Commissioners ("Defendant County") hired Plaintiff on or about January 26, 2012, to work as an administrative specialist in its Economic Development Office ("EDO"). (Doc. #16, ¶ 11).  The EDO "has multiple responsibilities to promote, coordinate and, monitor economic development, recruitment, marketing, financial, and administrative functions in Lee County."  (Doc. #16, ¶ 14).  Defendants Glen Salyer, James Moore, Jennifer Berg, and Christine Brady are all former or current employees of the EDO or Defendant County.  (Doc. #16, ¶¶ 4-7).

Lee County and the State of Florida each award grants to the EDO.  (Doc. #16, ¶ 15).  Sometime during her employment, Plaintiff "became aware of the County's extensive improper use of grant and loan programs through the [EDO]."  (Doc. #16, ¶ 13).  After receiving several complaints regarding this conduct, an internal audit was launched (the "Audit").  (Doc. #16, ¶ 16).  Plaintiff, along with five other employees, voluntarily participated in the Audit.  (Doc. #16, ¶ 18).

Plaintiff's participation included providing written statements and taking part in interviews. (Doc. #16, ¶ 19).  She disclosed numerous instances of Defendants allegedly misappropriating grant monies and loans.  At some point, Plaintiff also reported these matters to her supervisor. (Doc. #16, ¶ 19). After the Audit, Defendants Moore and Salyer allegedly retaliated against Plaintiff for disclosing their alleged malfeasance.  (Doc. #16, ¶ 52).  Then, on October 30, 2013, Defendants Salyer, Moore, Berg, and Brady discharged Plaintiff.  (Doc. #16, ¶ 53).

On March 13, 2014, Plaintiff commenced this action against Defendants, alleging, among other things, that Defendants unlawfully discharged her in retaliation for exercising her First Amendment free speech rights during the Audit. (Doc. #16, ¶¶ 73-141).[2] Defendants filed a motion to dismiss for failure to state a claim (Doc. #32) on May 12, 2014, which Plaintiff opposed (Doc. #34). On July 24, 2014, the Court granted in part and denied in part Defendants' motion (Doc. #38). In Plaintiff's instant motion, she takes issue with the Court dismissing with prejudice her First Amendment retaliation counts (Counts I-V).

## STANDARD OF REVIEW

Reconsideration of a court's previous order is an extraordinary remedy and, thus, is a power which should be used sparingly. See Am. Ass'n of People with Disabilities v. Hood, 278 F. Supp. 2d 1337, 1339 (M.D. Fla. 2003) (citing Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth., 814 F. Supp. 1072, 1072-73 (M.D. Fla. 1993)). "A motion for reconsideration should raise new issues, not merely readdress issues litigated previously." PaineWebber Income Props. Three Ltd. P'ship v. Mobil Oil Corp., 902 F. Supp. 1514, 1521 (M.D. Fla. 1995). Courts have "delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; [and] (3) the need to correct clear error or prevent manifest injustice." Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D. Fla. 1994). Unless the movant's arguments fall into one of these categories, the motion must be denied.

---

[2] In Counts VI-IX of the Amended Complaint, Plaintiff alleged that Defendant violated the federal Racketeer Influenced and Corrupt Organizations Act, Florida's Public Whistleblower Act, and the Fair Labor Standards Act. (Doc. #1; Doc. #16). The Court's decision as to these counts are not at issue here.

3

A motion for reconsideration does not provide an opportunity to simply reargue—or argue for the first time—an issue the Court has once determined. Court opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." Quaker Alloy Casting Co. v. Gulfco Indus., Inc., 123 F.R.D. 282, 288 (N.D. Ill. 1988). A motion to reconsider must set forth facts or law of a strongly convincing nature to demonstrate to the court the reason to reverse its prior decision. See Taylor Woodrow, 814 F. Supp. at 1073; PaineWebber, 902 F. Supp. at 1521. "When issues have been carefully considered and decisions rendered, the only reason which should commend reconsideration of that decision is a change in the factual or legal underpinning upon which the decision was based." Taylor Woodrow, 814 F. Supp. at 1072-73. "The burden is upon the movant to establish the extraordinary circumstances supporting reconsideration." Mannings v. Sch. Bd. of Hillsborough Cnty., 149 F.R.D. 235, 235 (M.D. Fla. 1993).

With these principles in mind, the Court will address Plaintiff's arguments in turn.

## DISCUSSION

Plaintiff urges the Court to reconsider its Order (Doc. #38) because of the Supreme Court's recent holding in Lane v. Franks, 134 S. Ct. 2369 (2014). According to Plaintiff, Lane represents an intervening change in controlling law and the Court must correct its error of not addressing Lane in its decision. Before addressing the merits of Plaintiff's arguments, the Court will briefly discuss the Lane decision.

In Lane, the Central Alabama Community College ("CACC") employed plaintiff as the director of a statewide community program for underprivileged youth. 134 S. Ct. at 2375. Plaintiff, in his capacity as director, conducted a comprehensive audit of the

program's expenses. Id. Plaintiff discovered that an Alabama State Representative was on the program's payroll but not reporting to work. Id. Plaintiff shared his finding with the CACC's president and attorney, but they warned him that discharging the Representative could have negative consequences. Id. In the face of that warning, plaintiff still discharged the Representative, which drew the attention of the Federal Bureau of Investigation ("FBI"). Id. The FBI investigated the Representative's employment with the program, and plaintiff testified before a federal grand jury about his conduct. Id. A grand jury thereafter indicted the Representative. Id. Approximately two years later, plaintiff testified, under subpoena, at the Representative's trial regarding the events that led to the discharge. Id. The jury failed to reach a verdict, but the case against the Representative was retried and plaintiff testified again. Id. The second jury convicted the Representative. Id. Approximately five months after plaintiff testified in the second trial, CACC's president discharged plaintiff for budgetary reasons. Id. at 2376. Plaintiff then sued the president in his official and individual capacities under 42 U.S.C. § 1983, alleging that the president violated his First Amendment rights by firing him in retaliation for testifying against the Representative. Id.

The district court granted defendant's motion for summary judgment, holding that qualified immunity barred the individual-capacity claims and the Eleventh Amendment barred the official-capacity claims. Id. The Eleventh Circuit affirmed, holding that plaintiff testified as an employee and not a citizen because he acted pursuant to his official duties when he investigated and discharged the Representative. In reaching this holding, the Eleventh Circuit stated "[t]hat [the plaintiff] testified about his official activities pursuant to

a subpoena and in the litigation context, in and of itself, does not bring [his] speech within the protection of the First Amendment." Lane, 523 F. App'x 709, 712 (11th Cir. 2013).

The Supreme Court granted certiorari "to resolve discord among the Court of Appeals as to whether public employees may be fired – or suffer other adverse employment consequences – for providing truthful subpoenaed testimony outside the course of their ordinary job responsibilities." 134 S. Ct. at 2377 (citations omitted). The Supreme Court held that "[t]ruthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes. That is so even when the testimony relates to his public employment or concerns information learned during that employment."[3] 134 S. Ct. at 2378.

Against this backdrop, the Court turns to Plaintiff's Motion for Reconsideration. As previously stated, Plaintiff submits that reconsideration is necessary because of Lane. For the following reasons, the Court disagrees.[4]

To begin, Plaintiff misrepresents the holding in Lane. Plaintiff declares that the "Supreme Court held that speech 'by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes.'" (Doc. #39 at 4). Plaintiff omits the cornerstone language of "[t]ruthful testimony under oath" from her

---

[3] As an aside, the Supreme Court did not offer "an express opinion" on "whether truthful sworn testimony would constitute citizen speech under *Garcetti* when given as part of a public employee's ordinary job duties," because it was undisputed that the plaintiff's ordinary job duties did not include testifying in court proceedings. Lane, 134 S. Ct. at 2378 n.4.

[4] Plaintiff claims that "[d]ue to the timing of the Supreme Court's decision, the parties were not able to address Lane in their briefs." (Doc. #39 at 1). Beyond this conclusory assertion, Plaintiff offers no explanation for why she failed to alert the Court to this allegedly binding precedent. The Court sees no reason for Plaintiff's failure given approximately four weeks lapsed between when the Supreme Court issued Lane and this Court issued its decision. See e.g., Grimaldo v. Reno, 189 F.R.D. 617, 619 (D. Colo. 1999) ("In our adversarial system, I am under no obligation to conduct research to provide the proper support for arguments presented by any party other than pro se ones. . . ."); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

6

characterization of the Supreme Court's holding. Lane, 134 S. Ct. at 2378. To be clear, the Supreme Court held, in its entirety, "[t]ruthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes." Id. It is uncontroverted that the Supreme Court specifically considered "whether the First Amendment protects a public employee who *provides truthful sworn testimony, compelled by subpoena*, outside the course of his ordinary job responsibilities." Id. (emphasis added). In fact, the Supreme Court criticized the Eleventh Circuit for giving "short and shrift to the nature of sworn judicial statements and ignored the obligation borne by all witnesses testifying under oath." Id. at 2379 (citation omitted). The Supreme Court stated that

> [s]worn testimony in judicial proceedings is a quintessential example of speech as a citizen for a simple reason: Anyone who testifies in court bears an obligation, to the court and society at large, to tell the truth. . . . When the person testifying is a public employee, he may bear separate obligations to his employer – for example, an obligation not to show up to court dressed in an unprofessional manner. But any such obligations as an employee are distinct and independent from the obligation, as a citizen, to speak the truth. That independent obligation renders sworn testimony speech as a citizen and sets it apart from speech made purely in the capacity of an employee.

Lane, 134 S. Ct. at 2379 (internal citations omitted). Plaintiff has effectively cherry-picked language from Lane that best suits its position and omitted, without any explanation, language that clearly cuts against Lane being an intervening change in controlling law to incite reconsideration of the Court's previous Order.

Next, Plaintiff summarily asserts that Lane is "very similar" to the instant case without offering any argument in support. (Doc. #39 at 1, 3, 6). Besides the plaintiff in Lane and Plaintiff both speaking on purported public corruption scandals, the cases are

7

distinct in light of when and to whom they made their statements. In Lane, the plaintiff's subpoenaed trial testimony was necessary to prosecute a public official for corruption. Conversely, Plaintiff in this case voluntarily revealed Defendants' alleged malfeasance during the internal Audit. Plaintiff simply did not speak under oath at a trial pursuant to a subpoena. And, at no point in Plaintiff's Motion does she attempt to address this glaring distinction.

Even if Lane was factually similar to the case at bar, Plaintiff's Motion fails because she misinterprets the Court's explanation of Garcetti v. Ceballos, 547 U.S. 410, 421-22 (2006) as it applies here. In Garcetti, the Supreme Court "found that an internal memorandum prepared by a prosecutor in the course of his ordinary job responsibilities constituted unprotected employee speech." Lane, 134 S. Ct. at 2378 (citing Garcetti, 547 U.S. at 424). In Lane the Supreme Court resolved that the Eleventh Circuit read Garcetti too broadly. Id. Specifically, the Supreme Court turned down the Eleventh Circuit's "reason[ing] that, because [the plaintiff] learned of the subject matter of his testimony in the course of his employment with CITY, Garcetti requires that his testimony be treated as the speech of an employee rather than that of a citizen." Id. (citing 523 F. App'x at 712). The Supreme Court went on to state

> Garcetti said nothing about speech that simply relates to public employment or concerns information learned in the course of public employment. The Garcetti Court made explicit that its holding did not turn on the fact that the [internal] memo at issue "concerned the subject matter of [the prosecutor's] employment," because "[t]he First Amendment protects some expressions related to the speaker's job. . . . In other words, the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee – rather than citizen – speech. The critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an

8

> employee's duties, not whether it merely concerns those duties.

Lane, 134 S. Ct. at 2379 (citing Garcetti, 547 U.S. at 421). Because of Lane, it is clear that Garcetti does not require courts to find that a plaintiff's speech loses First Amendment protection simply because the speech touches on a subject matter she learned during the course of her employment.

Plaintiff, however, suggests the Court dismissed her First Amendment retaliation claims exclusively on the ground that she learned of Defendants' alleged malfeasance during her employment at the EDO. The fallacy of this position is self-evident, as the Court's analysis did not singularly hinge on Plaintiff's admission that she learned of Defendants' alleged misappropriation of grants and loans during her tenure as an administrative specialist at the EDO. (Doc. #16, ¶ 13). The Court dismissed Plaintiff's claims after collectively considering several distinct factors. For example, the Court found convincing that (1) Defendant County launched the Audit; therefore, Plaintiff's participation was unlike her engaging in a civic discussion or using a public platform (*e.g.*, local newspaper or radio) to reveal Defendants' alleged conduct;[5] (2) no facts were alleged to suggest Plaintiff spoke to anyone other than the auditor and her unnamed supervisor about Defendants' alleged inappropriate conduct; and (3) Plaintiff made no allegations to show that her speech was anything other than an internal complaint she reported "up the chain of command." (Doc. #38 at 8-9). Simply put, the Court did not dismiss the First Amendment retaliation claims only because Plaintiff's speech concerned

---

[5] See, e.g., Fulmer v. Pennsylvania, 460 F. App'x 91, 94 n.5 (3rd Cir. 2012) ("[The plaintiff's] claim that the police internal affairs process is no different from any other employer investigatory process does not mean that in this forum employees speak as citizens. If anything, it suggests the opposite: that they speak pursuant to their official duties as employees.").

9

information she acquired by virtue of her public employment.  As such, the Court's Order (Doc. #38) is consistent with Lane's clarification of Garcetti.  In any event, the Court's opening ground for dismissing Plaintiff's First Amendment retaliation claims was because Plaintiff made legal conclusions couched as factual allegations that her speech was as a citizen, which contravened well settled case law on Federal Rule of Civil Procedure 12(b)(6).  (Doc. #38 at 5).

In sum, upon careful review, the Court finds no intervening change in controlling law or clear error to trigger the extreme remedy of reconsideration.  Accordingly, the Court will deny Plaintiff's motion.

Accordingly, it is now

**ORDERED:**

Plaintiff Lisa Wagner's Motion for Reconsideration (Doc. #39) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 21st day of August 2014.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record