UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LISA WAGNER, an individual

        Plaintiff,

v.                            Case No:   2:14-cv-29-FtM-38CM

LEE COUNTY, FLORIDA BOARD
OF COUNTY COMMISSIONERS,
GLEN SALYER, JAMES MOORE,
CHRISTINE BRADY and JENNIFER
BERG,

        Defendants.

_____/

## ORDER[1]

    This matter comes before the Court on Defendant's Motion for Summary Judgment on Count 10 of Plaintiff's Amended Complaint (Doc. #41) filed on August 14, 2014. Plaintiff filed a Response in Opposition on August 26, 2014. (Doc. #45). Thus, the Motion is ripe for review.

### Background

    Plaintiff is a former employee of Defendant Lee County, Florida, Board of County Commissioners. (Doc. #45-2 at 2). Defendant Lee County, Florida, Board of County Commissioners ("Defendant"), is a governmental entity that operates various offices, including the Lee County Economic Development Office ("LCEDO"). (Doc. #45-3 at 3,

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

¶ 4).  According to Glen Salyer, who served as interim director of the LCEDO, Defendant hired Plaintiff on January 12, 2012, to serve as an "Administrative Specialist" within the LCEDO.  (Doc. #47 at 2, ¶¶ 4-5)[2].

Mr. Salyer testifies that as an Administrative Specialist, Plaintiff "oversaw certain projects[,]" including the "management of the [LCEDO's] real estate database."  (Doc. #47 at 2, ¶¶ 14-15).  As Mr. Salyer explains, "[t]his database was the source from which businesses potentially seeking to relocate learned of the availability of real estate in Lee County[,]" and "was an integral component of encouraging new development in Lee County."  (Doc. #47 at 2, ¶¶ 16-17).  In managing the LCEDO's real estate database, Plaintiff "was responsible for selecting real estate sites that could be included in proposals made to companies that were considering whether to locate in Lee County."  (Doc. #47 at 2, ¶ 17).

On November 13, 2013, for reasons undisclosed by the Parties, Plaintiff and Defendant ended their employment relationship, and, soon after, Plaintiff filed this action. However, on May 12, 2014, Defendants requested (Doc. #32), and the Court granted (Doc. #38), in part, dismissal of Plaintiff's Amended Complaint.  As a result of the Court's dismissal Order, the only counts remaining in the sui\]

---

[2] The Court notes that Defendant filed Doc. #47, a "Revised Affidavit of Glen Salyer in Support of Defendant's Motion for Summary Judgment," after Plaintiff filed its Response in Opposition (Doc. #45), without seeking leave of the Court.  However, a comparison of Mr. Salyer's original affidavit (Doc. #41-1) and his revised affidavit (Doc. #47) reveals that there are no material differences between the two documents.  Instead, the only difference is that in his revised affidavit, Mr. Salyer provided the testimony in Lee County, Florida, whereas in his original affidavit, Mr. Salyer provided the testimony in Miami-Dade County, Florida.  Cf. (Doc. #41-1 with Doc. #47).  Therefore, the Court chooses not to strike the revised affidavit in this instance.

are Counts 9 and 10, alleging violations of Florida's Public Whistleblower Act ("PWA") and the Fair Labor Standards Act ("FLSA"), respectively, against Defendant.  (Doc. #38). Defendant now seeks summary judgment on the FLSA violation asserted in Count 10.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Similarly, an issue of fact is material if it may affect the outcome of the suit under governing law.  *Id.*

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In deciding whether the moving party has met this initial burden, courts must review the record and draw all reasonable inferences from the record in a light most favorable to the non-moving party.  See *Whatley v. CNA Ins. Co.*, 189 F.3d 1310, 1313 (11th Cir. 1999).  Once the court determines the moving party has met this burden, the burden shifts to the non-moving party to present facts showing a genuine issue of fact exists to preclude summary judgment.  See *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." *Demyan v. Sun Life Assurance Co. of Can.*, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing *Avigran v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991)).  Failure to show sufficient evidence of any

essential element is fatal to the claim and the court should grant the summary judgment. *See Celotex*, 477 U.S. at 322-23.  Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied.  *See Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1532 (11th Cir. 1992).  With this standard in mind, the Court will address Defendants' arguments below.

## Discussion

Defendant seeks summary judgment on Count 10 of Plaintiff's Amended Complaint on the basis that Plaintiff's position as an Administrative Specialist qualifies her for the FLSA's administration exemption.  In support, Defendant begins by correctly observing that the first requirement of the FLSA's administration exemption simply requires that the employee earn more than $455 per week. As Defendant notes, Plaintiff's pay rate during her employment ranged from $634.62 to $653.66 per week.  (Doc. #41 at 5).  Therefore, Defendant asserts that Plaintiff's salary easily satisfies the first requirement needed to exempt Plaintiff from the FLSA's overtime requirements under the administration exemption.  (Doc. #41 at 5).

Next, Defendant asserts that Plaintiff performed office or non-manual work that was directly related to the LCEDO's general business operations, satisfying the FLSA's administration exemption's second requirement.  (Doc. #41 at 6).  As Defendant explains, because the LCEDO's mission was "to promote, coordinate[,] and monitor economic development, recruitment, marketing, financial, and administrative functions in Lee County[,]" Plaintiff's "job focus" of "providing administrative support to the [LCEDO] Business Assistance Team to encourage the location of companies and expansion of existing companies" was "central to the [LCEDO's] mission."  (Doc. #41 at 6).  Defendant

attempts to further this argument by noting that Plaintiff also managed the LCEDO's real estate database, which "was an integral component of encouraging new development in Lee County" and furthering the LCEDO's mission.  (Doc. #41 at 6-7).  Consequently, Defendant asserts that these job duties constitute exempt work, thereby illustrating that Plaintiff's employment satisfies the FLSA's administration exemption's second requirement.

Finally, Defendant argues that because "Plaintiff exercised discretion and independent judgment with respect to matters of significance as her primary duty," Plaintiff satisfies the third requirement of the FLSA's administration exemption.  (Doc. #41 at 7).  To support his contention, Defendant points to the fact that Plaintiff's job responsibilities and tasks required a "high-level of privacy and confidentiality," thereby necessitating Plaintiff to "re[ly] heavily on discretion and independent judgment."  (Doc. #41 at 8).  In addition, Defendant contends that Plaintiff used this independent judgment with respect to matters of significance because Plaintiff was tasked with managing the LCEDO's real estate database and relied upon for her "software and hardware technical expertise."  (Doc. #41 at 9).  Based on these arguments, Defendant believes Plaintiff's employment satisfies the three requirements of the FLSA's administration exemption, and the Court should grant summary judgment on Count 10 in its favor.

In her Response, Plaintiff begins by conceding that she meets the first requirement of the FLSA's administration exemption because her salary during her employment with Defendant was in excess of $455 per week.  (Doc. #45 at 5).  But as to Defendant's remaining arguments, Plaintiff disputes that her work "was directly related to the general business operation of the [LCEDO], and firmly disagree[s] as to the required third prong

given the evidence adduced by [Plaintiff] that she absolutely did not exercise discretion and independent judgment with respect to matters of significance." (Doc. #45 at 5-6). Contrary to Defendant, Plaintiff avers that her position was "purely secretarial," which did not entail any "work 'of substantial importance to the management or operation of the business of [her] employer.'" (Doc. #45 at 7 (citing 29 C.F.R. § 541.205(c)). In fact, Plaintiff adamantly asserts that her position "did not at all call for her to exercise even limited discretion, let alone discretion on matters of significance to the [LCEDO]." As such, Plaintiff contends that there are material issues of fact that preclude summary judgment in favor of Defendant on Count 10.

In 1938, Congress enacted the FLSA to "aid the unprotected, unorganized, and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n. 18 (1945)). Simply stated, the FLSA "establishes minimum labor standards to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Id.* (quoting 29 U.S.C. § 202(a)). As part of these minimum labor standards, the FLSA requires employers to provide "employees 'engaged in commerce or in the production of commerce' overtime when an employee works more than forty hours in a week." *Id.* (quoting 29 U.S.C. § 207(a)(1)).

But this requirement is not absolute. Instead, Congress created an "exemption from the overtime pay requirement . . . for employees [employed] in a 'bona fide . . . administrative . . . capacity' . . . as defined by regulations of the Secretary." *Id.* (quoting

29 U.S.C. § 213(a)(1)).  Those regulations define "[a]n employee employed in a bona fide administrative capacity [as] one: (1) who is paid a salary of at least $455 per week; (2) 'whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers'; and (3) 'whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.'"  *Adams v. BSI Mgmt. Sys. Am., Inc.*, 523 F. App'x 658, 660 (11th Cir. 2013) (quoting 29 C.F.R. § 541.200(a)) (internal brackets omitted).

With these requirements in mind, it should be noted that "[t]he employer bears the burden of proving that an employee is exempt from overtime payments." *Rock v. Ray Anthony Int'l, LLC*, 380 F. App'x 875, 877 (11th Cir. 2010) (citing *Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 804 (11th Cir.1991)).  And "FLSA provisions are to be interpreted liberally in the employee's favor and its exemptions construed narrowly against the employer." *Id.* (citing *Birdwell v. City of Gadsden*, 970 F.2d 802, 805 (11th Cir. 1992)).  Here, because the Parties agree that Plaintiff easily meets the first requirement of the FLSA's administration exemption, requiring that the employee earn more than $455 per week, the Court's analysis will focus on the two remaining requirements.  (Doc. #41 at 5; #45 at 5).

As noted, the second requirement of the FLSA's administration exemption requires that the employee be one "whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a).  According to the regulations, "directly related to the management or general business operations" refers to "work

directly related to assisting with the running or servicing of the business. . . ."   29 C.F.R.

§ 201(a).   The regulations provide a non-exhaustive list of work that would qualify under

this definition:

> Work directly related to management or general business operations
> includes, but is not limited to, work in functional areas such as tax; finance;
> accounting; budgeting; auditing; insurance; quality control; purchasing;
> procurement; advertising; marketing; research; safety and health;
> personnel management; human resources; employee benefits; labor
> relations; public relations, government relations; computer network, internet
> and database administration; legal and regulatory compliance; and similar
> activities. Some of these activities may be performed by employees who
> also would qualify for another exemption.

29 C.F.R. § 201(b).

While interpreting the FLSA provisions liberally in favor of Plaintiff and construing

the administration exemption narrowly against Defendant, the Court finds that there is a

genuine issue of material fact as to whether Plaintiff's work directly related to the

management or general business operations of the LCEDO.   As noted above, Defendant

primarily relies on the affidavit of Mr. Salyer in support of its Motion.   A review of Mr.

Salyer's affidavit shows that Mr. Salyer's testimony regarding Plaintiff's role within the

LCEDO provides a number of conclusory statements that mimic the administration

exemption language contained in the regulations.   *Cf.* (Doc. #47-1, ¶¶ 10-13 with 29

C.F.R. § 541.200(a)).   Beyond these conclusory statements, and in support of

Defendant's argument that Plaintiff meets the administration exemption's second

requirement, Mr. Salyer testifies that Plaintiff's job entailed managing the LCEDO's real

estate database and solving issues that arose with computer hardware and software.

(Doc. #47-1 at 3, ¶¶ 15-19). As such, Defendant believes this testimony clearly illustrates

that Plaintiff's work directly related to the management or general business operations of the LCEDO.

However, Plaintiff provides a different perspective on her role with the LCEDO. Contrary to Defendant, Plaintiff avers in her own affidavit that her "duties were more like those of a common secretary," which would not qualify her for the administration overtime exemption. (Doc. #45-2 at 3, ¶ 7).  As Plaintiff explains in her testimony, in contradiction to Mr. Salyer's testimony, "[t]he Property/Real Estate Database on the [LCEDO's] website, including the Business Directory[,] were [her supervisor's] primary responsibilities." (Doc. #45-2 at 5, ¶ 23).  That is, Plaintiff avers that she "had no access or authority to make any changes to the [LCEDO] website," and instead "was tasked with only verifying/checking that 'links and hyperlinks' were working properly." (Doc. #45-2 at 5, ¶ 24) (emphasis in original).  If Plaintiff discovered "any anomalies, or hardware or software issues," Plaintiff testifies that she was required to bring those to the attention of her supervisor, and was not permitted to make any corrections herself.  (Doc. #45-2 at 5, ¶ 24).  Therefore, because "all tasks that [she] was working on were tasks set by [her immediate supervisor]," Plaintiff asserts that her position was "purely secretarial in nature." (Doc. #45-2 at 6, ¶ 36).

In addition to her own affidavit, Plaintiff provides the Court with an affidavit from her immediate supervisor during her employment with the LCEDO, Susan Noe.  (Doc. #45-1).  In her affidavit, Ms. Noe confirms Plaintiff's affidavit testimony and "firmly disagree[s] with [Mr. Salyer's] assertions that [Plaintiff's] duties were more than those of a common secretary." (Doc. #45-1 at 2, ¶ 5).  In support of her contention that Plaintiff's "primary job functions were those of a secretary," Ms. Noe notes that Plaintiff's primary

job functions included "provid[ing] support, send[ing] out notices, book[ing] travel as directed by management, maintain[ing] files, assist[ing] with directory and plan updates, assist[ing] with web updates, assist[ing] management with meetings, tak[ing] minutes[,] and work[ing] as a receptionist at the front desk." (Doc. #45-1 at 2, ¶ 7).  Ms. Noe further testifies that "Mr. Salyer's Affidavit is nothing more than a concocted and complete fabrication of what [Plaintiff's] job duties really were." (Doc. #45-1 at 7, ¶ 39).  Ms. Noe continues by nothing that Plaintiff's "secretarial work did not affect the [LCEDO's] business operations to a substantial degree and when she was out sick or on vacation, her absence did not substantially affect the operations of the [LCEDO]." (Doc. #45-1 at 8, ¶ 45).

Because the Court is required to view these conflicting affidavits in the light most favorable to Plaintiff, the non-moving party, it is clear that summary judgment is not proper at this time.  While it is possible that Defendant's position – concluding that Plaintiff's job duties are directly related to the general business operations of the LCEDO and are sufficient to meet the second requirement of the administration overtime exemption – is correct, Defendant fails to illustrate that reasonable minds could not differ as to this conclusion. Notably, Defendant does not provide the Court with any uncontradicted evidence or testimony that indicates Plaintiff's job duties fell within at least one of 29 C.F.R. § 201(b)'s, *albeit* non-exhaustive, list of job duties that would satisfy the second requirement of the administration overtime exemption.  *Cf. Viola v. Comprehensive Health Mgmt., Inc.,* 441 F. App'x 660, 663 (11th Cir. 2011) (finding that summary judgment for the defendant was appropriate when the plaintiff's testimony clearly indicated that her

job duties fell within at least four of the categories of job duties listed in 29 C.F.R. § 201(b)).

Beyond relying on Mr. Salyer's contradicted affidavit for its conclusion that Plaintiff's job duties satisfy the administration overtime exemption's second requirement, Defendant relies on its "mission" to illustrate the same.  (Doc. #41 at 6).  Specifically, Defendant notes that its "mission" is to "promote, coordinate and monitor economic development, recruitment, marketing, financial, and administrative functions in Lee County."  (Doc. #41 at 6).  And because Defendant labeled Plaintiff's "job focus" as "providing administrative support to the [LCEDO] Business Assistance Team to encourage the location of companies and expansion of existing companies," Defendant avers that Plaintiff's job "was central to the [LCEDO's] mission."  (Doc. #41 at 6 (citing Doc. #41-1 at 14-20)).  But, the key words here are "providing administrative support." Even if Plaintiff did provide the administrative support noted in her "job focus" description, Plaintiff's and Ms. Noe's affidavits make clear that such administrative support amounted to nothing more than routine secretarial work that fails to meet the administration overtime exemption's second requirement.  (Doc. #45-1; #45-2).

Based on the foregoing, Defendant has not satisfied its burden of illustrating that there is no genuine issue as to whether Plaintiff's primary job duty was the performance of exempt work.  Therefore, because there is a genuine issue of material fact present at this stage of the litigation, the Court finds that Defendant's Motion must be denied.

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Summary Judgment on Count 10 of Plaintiff's Amended Complaint (Doc. #41) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida, this 16th day of October, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record