UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

Lisa Wagner,                                              Civ. No. 2:14-29-SPC-CM

           Plaintiff,

v.                                                     **MEMORANDUM AND ORDER**

Lee County, Florida Board of
County Commissioners, Glen
Salyer, James Moore, Christine
Brady, and Jennifer Berg,

           Defendants.
_____

This matter is before the Court on the parties' cross-motions for summary judgment and Defendant Lee County Board of Commissioners' Motion to Strike Portions of Plaintiff's Surreply. For the reasons that follow, Defendant's Motion for Summary Judgment is granted, Wagner's is denied, and Defendant's Motion to Strike is denied as moot.

**BACKGROUND**

After being terminated from her position at the Lee County Economic Development Office ("EDO"), Lisa Wagner brought this action against the Lee County Board of County Commissioners ("County") and four individual defendants, current and former EDO employees. The Hon. Sheri P. Chappell dismissed eight counts with prejudice in July 2014. (Order, Docket No. 38.) Both parties now seek summary judgment on Wagner's remaining claims against the County, under (1) Florida's Public Whistleblower Act, asserting that Wagner was fired for revealing her employer's

improper use of grants and loans, and (2) The Fair Labor Standards Act, alleging that the County misclassified Wagner as an exempt employee and thus failed to pay her for overtime work.

The EDO's role is to promote economic development in Lee County. It also serves recruitment, marketing, financial, and administrative functions. Wagner worked for the EDO as an administrative specialist, a salaried full-time position, from January 2012 to November 2013. (Wagner Aff. ¶ 3.) Her starting salary was $1269.23 biweekly. (Id. ¶ 4.) Susan Noe, the EDO's manager of business assistance, hired Wagner and acted as her direct supervisor. (Noe Aff. ¶ 3.) During that time, Wagner alleges that she worked "a tremendous amount of overtime on a regular basis – at least two (2) to three (3) hours every week, but many times more than that as the amount of overtime depended upon the project or assignment." (Wagner Aff. ¶ 37.)

During her time at the EDO, Wagner claims that she learned of several instances of improper and illegal practices involving grant and loan money. (Am. Compl. (Docket No. 16) ¶ 13.) For example, she allegedly learned that Glen Salyer, who was the assistant to the county manager, and James Moore, who was EDO's director, wrote fraudulent grant proposals from which they and some of their friends improperly received personal financial benefits. (Id. ¶¶ 23-27.) She also alleges to have known that Jennifer Berg, who was the EDO's Marketing Manager, routed business to her husband's company in violation of Florida law and Lee County policies regarding ethics and conflicts of interest. (Id. ¶¶ 34, 35.)

In April 2013, the Lee County Clerk of Courts initiated an audit of the EDO's use of grant and loan programs. (Pl.'s Supp. Mem. (Docket No. 59) Ex 9.) Wagner, along with five other coworkers, voluntarily participated in the audit in April and May 2013, and Wagner claims that she disclosed the above instances of misconduct as well as several others described in the Complaint. (Am. Compl. ¶¶ 4-8.) In August 2013, the Clerk of Courts released the audit findings, concluding that the EDO's handling of grant and loan programs was improper and that certain EDO employees had violated their ethical duties and had engaged in conduct evincing a conflict of interest. (Pl.'s Supp. Mem. Ex 9.)

Salyer became the interim EDO Director in September 2013. (Salyer Dep. 31:11-22.) Within the first ten weeks of Salyer's tenure, he discharged five employees who had spoken with the auditor, including Wagner, who was terminated on October 31, 2013. (Id. at 99; Wagner Aff. ¶ 37.) Wagner alleges that she and other EDO employees who participated in the audit were terminated in retaliation for disclosing the EDO's misconduct. According to the County, Wagner was terminated because there was not enough work for all of the EDO's administrative employees, Wagner was the least tenured among them, and the County stopped using the real estate database Wagner had worked on. The County also asserts that it terminated her to reduce expenditures. Wagner disputes that her termination had anything to do with the EDO budget, alleging that the County actually increased the EDO budget for 2013/2014. Wagner's position was not refilled, the County contends; rather her responsibilities were eliminated or reassigned.

**DISCUSSION**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears "the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted). Where the moving party makes such a showing, the burden shifts to the nonmoving party, who must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials and must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**A. FLSA Claim**

The Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., requires employers to pay covered employees one-and-a-half times their normal hourly rate for each hour worked over forty hours in a workweek. See 29 U.S.C. § 207(a)(1). Employees exempt from this requirement under the FLSA include those "employed in a bone fide executive, administrative, or professional capacity." Id. § 213(a)(1). "For the administrative exemption to apply, an employee must (1) earn no less than $455 per

week, (2) have primary duties that involve 'the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers,' and (3) exercise 'discretion and independent judgment with respect to matters of significance' in performing his primary duties." Rock v. Ray Anthony Int'l, LLC, 380 F. App'x 875, 877 (11th Cir. 2010) (quoting 29 C.F.R. § 541.200(a)). The employer bears the burden of proving that an exemption applies, and courts construe FLSA exemptions narrowly. Abel v. S. Shuttle Servs., Inc., 631 F.3d 1210, 1212 (11th Cir. 2011). The exemptions are "applied only to those clearly and unmistakably within the terms and spirit of the exemption." Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1269 (11th Cir. 2008).

To establish a prima facie FLSA claim, Wagner must demonstrate by a preponderance of the evidence: an employee-employer relationship; that the County was engaged in activities within the coverage of FLSA; that the County violated FLSA wage requirements; and that a definite amount of compensation is due. 29 U.S.C. § 207(a). Only then does the burden shift to the County to prove by a preponderance of the evidence that one of the FLSA exemptions applies to Wagner. Idaho Sheet Metal Works v. Wirtz, 383 U.S. 190 (1966).

Wagner makes much of the fact that the County has the burden to prove that any FLSA exemptions apply to her, but she has failed as an initial matter to make the required evidentiary showing of the number of overtime hours she worked in the form of testimonial or documentary evidence. Wagner testified in an affidavit that she worked a tremendous number of overtime hours, two to three hours a week, and often more, but

she does not even estimate the total number of overtime hours she worked in any particular week. Wagner offers as evidence timecards for the period from January 1, 2012, to December 31, 2013, but these do not indicate that Wagner worked any overtime hours at all—they support the opposite conclusion, and Wagner has offered no evidence to rebut that conclusion. (Pl.'s Supp. Mem. Ex 1). Without more, the record does not support her claim to be owed a "definite amount of compensation," as FLSA requires. Therefore, Wagner has not made a prima facie showing of a FLSA violation and summary judgment in favor of the County is appropriate on her FLSA claim.

**B. Retaliation Claim**

    **1.    Factual Record**

Before addressing the substance of Wagner's retaliation claim, the Court must comment on the conduct of Wagner's attorney. In Wagner's memorandum in support of her motion for summary judgment, a section entitled "Statement of Undisputed Facts" lists Wagner's factual allegations with citations to the record. That section is replete with flagrant misrepresentations and unsupported allegations. Counsel takes testimony out of context, spins statements, and asserts that witnesses admitted to things that they clearly denied. Moreover, counsel repeatedly relies on these false statements throughout the remainder of the memorandum, and in Wagner's response to the County's summary judgment motion, and her surreply, despite that the County pointed out every instance of misrepresentation in its reply to Wagner's motion for summary judgment. Once these inaccurate statements are omitted, almost no evidence of retaliation remains. Below are only a few examples of counsel's misrepresentations of the record:

- The supporting memorandum states that Salyer admitted that many of Wagner's duties were secretarial. (Pl.'s Supp. Mem. 6, ¶ 29.) But when asked if Wagner's duties were akin to what a secretary does, Salyer testified as follows: "No. I wouldn't say that. I mean, certainly there are some aspects of that that you've outlined, and then, of course, there's all the business-development-related stuff she did and the technology stuff that she did, et cetera." (Salyer Dep. 153:14-22.)

- The memorandum implies that Salyer knew that Wagner participated in the audit, and states that "Salyer clearly testified" that he took the audit findings into account when making layoffs. (Pl.'s Supp. Mem. 7, ¶ 42.) Salyer in fact testified that he did not know Wagner had participated in the audit, rather, he assumed that "everybody had." (Salyer Dep. 172:23.)

- The memorandum claims that Salyer "[b]acktrack[ed] from his claims of terminating Ms. Wagner for her attitude." (Pl.'s Supp. Mem. 8, ¶ 49.) However, Salyer did not testify to this fact. When he was asked whether the fact that Wagner was not "onboard with what you were trying to change within the [EDO]" was a factor in her separation, he stated that it was not. (Salyer Dep. 110:24-111:7)

Several other instances of misrepresentations of the record are listed on pages 3 to 11 of the County's response to Wagner's motion for summary judgment. (Docket No. 63.) The Court reminds counsel that, under the Federal Rules of Civil Procedure, by filing a written motion, "an attorney . . . certifies that to the best of [his] knowledge, information, and belief, . . . the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). The Court advises counsel to ensure his ongoing compliance with Rule 11 and cautions him against making misrepresentations to the Court in the future.

### 2. Merits

Wagner alleges that the County violated Florida's Public Whistleblower Act ("PWA"), Fla. Stat. § 112.3187 et seq., when it discharged her in retaliation for disclosing the EDO's improper practices to the auditor. The PWA protects employees

7

who disclose "[a]ny violation or suspected violation of any . . . local law, rule, or regulation committed by an employee or agent of an agency" or "[a]ny act or suspected act of gross mismanagement, malfeasance, misfeasance" from discipline or dismissal. §§ 112.3187(4), (5), (7). The nature of and circumstances leading to the disclosure are relevant. Disclosures presented "in a written and signed complaint," as well as those made by persons "who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity" are protected. § 112.3187(7). In the local government context, only information disclosed "to a chief executive officer . . . or other appropriate local official" is entitled to protection. § 112.3187(6).

PWA retaliation claims are analyzed under the McDonnell Douglas burden-shifting method of proof used Title VII cases. Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th Cir. 2000). To establish a prima facie case of retaliation under the PWA, Wagner must therefore show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two events. See Castro v. Sch. Bd. of Manatee Cty., Fla., 903 F. Supp. 2d 1290, 1302 (M.D. Fla. 2012). If Wagner proves her prima facie case, the County may rebut it by proffering a legitimate, non-retaliatory reason for its actions. Rice-Lamar v. City of Fort Lauderdale, 853 So.2d 1125, 1133 (Fla. 4th Dist. Ct. App. 2003). Should the County succeed in doing so, the burden then shifts back to Wagner to prove by a preponderance of the evidence that the County's proferred reason is merely pretext for prohibited, retaliatory conduct. Sierminski, 216 F.3d at 950.

The Court must first determine whether Wagner engaged in a statutorily protected activity. In her Amended Complaint, Wagner alleges that she "made disclosures on her own initiative in a written or signed complaint and when she was requested to participate in an investigation." (Am. Compl. ¶ 193.) However, Ms. Wagner has not presented any evidence of a written and signed complaint, nor does the record show that anyone requested that she participate in the audit. In fact, Wagner states in her summary judgment memorandum that she "voluntarily participated in the audit." (Pl.'s Supp. Memo at 1.)

Although the record does not support Wagner's allegation that she engaged in statutorily protected activity, even if it did, she cannot demonstrate a causal relationship[1] between such activity and her termination. There is no causal connection where there is "unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000). After all, "[a] decision maker cannot have been motivated to retaliate by something unknown to him." Id. Wagner insists that Salyer "clearly testified that he knew of the audit, that he assumed Ms. Wagner participated and that the audit played a significant role in his decision to separate . . . employees who cooperated with the audit of the EDO." (Pl.'s Supp. Mem. 13.) However, as discussed above, the record simply does not support these allegations. Because Salyer did not know that Wagner

---

[1] The parties do not dispute that Wagner suffered an adverse employment action when she was terminated from her position with the EDO.

9

participated in the audit, the County is entitled to summary judgment on Wagner's PWA retaliation claim as well.

**CONCLUSION**

Wagner has failed to establish that any genuine issues of fact remain on her claims. Accordingly, **IT IS HEREBY ORDERED** that:

1. The County's Motion for Summary Judgment (Docket No. 62) is **GRANTED**;

2. Lisa Wagner's Motion for Summary Judgment (Docket No. 59) is **DENIED**; and

3. The County's Motion to Strike (Docket No. 76) is **DENIED as moot**.

**The Clerk shall enter judgment accordingly, terminate all remaining deadlines as moot, and close the file.**

Dated: January 27, 2016

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge